Todd, Appellant, *v.* Talatta.

Argued December 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John P. Thomas*, with him *Walker & Walker*, for appellant.

*William E. Schantz*, with him *Snyder, Wert, Wilcox, Frederick & Doll*, for appellee.

OPINION BY FLOOD, J., March 19, 1963:

The question here is whether the plaintiff was guilty of contributory negligence as a matter of law. Since the court below gave judgment for the defendant notwithstanding the jury's verdict for the plaintiff, we must view the evidence most favorably to the plaintiff in determining whether the verdict was properly set aside.

The plaintiff's testimony is that he was driving south on Kearney Street in the City of Allentown and, while crossing Livingston Street, which is twenty-two to twenty-five feet wide, he was struck by the defendant's car coming east on Livingston Street. About two-thirds of the width of the defendant's car and the actual point of impact were in the westbound lane of Livingston Street, so that the defendant's negligence clearly appears under the plaintiff's testimony.

As to the plaintiff's conduct, his testimony was that he was going 15 to 20 miles per hour as he approached

the intersection. When he was about forty feet from the intersection and could see traffic conditions to his right for a distance of approximately one hundred feet, he looked to his right and saw nothing. He then directed his attention to his left, where his vision was partially obscured, and again looked back to the right when he was about even with the curbline. At that time he had removed his foot from the gas pedal and had slowed down to 10 miles per hour. He then saw the defendant's car thirty-five to forty feet away approaching in the westbound lane of Livingston Street. The plaintiff swerved to the left and applied his brakes. He never passed the middle of the intersection. When the impact occurred the front of his car was about twelve feet south of the north curbline of Livingston Street and had not yet reached the center of the intersection. On cross-examination the plaintiff said that at the time of the impact his car was "equivalent to stopped or almost stopped . . . It's hard to determine whether it was moving or . . . stopped." The defendant was going at least thirty-five miles per hour at the time of impact. The plaintiff further testified on cross-examination that from the time he put his foot on the brake to the time when the impact occurred he traveled approximately twelve feet and the defendant traveled forty feet.

In holding the plaintiff guilty of contributory negligence as a matter of law the court below relied upon the familiar rule that when two vehicles approach an intersection at approximately the same time it is the duty of the driver on the left to yield the right of way (*Pugh v. Ludwig,* 409 Pa. 517, 186 A. 2d 911[2] (1963), *McMillan v. Mor Heat Oil and Equipment Co., Inc.,* 174 Pa. Superior Ct. 308, 101 A. 2d 413 (1953)), and the equally familiar rule that, even if he has the right of way, a driver cannot proceed heedlessly into an intersection testing an obvious danger. *Weigel v. Kravitz,*

178 Pa. Superior Ct. 275, 116 A. 2d 223 (1955). However, it ignored the rule that when the intersecting street is a two-way street, as Livingston Street was here, the plaintiff's duty as he approaches the intersection is to direct his vigilance first to the left and then *"as he nears the middle of the street,* it is his duty to look to the right again before entering into the traffic lane coming from that direction". *Connelly v. Smith,* 384 Pa. 205, 208, 120 A. 2d 165, 166 (1956).

Here the plaintiff looked to his right as he approached the intersection, saw nothing and then directed his attention to his left where his vision was somewhat obscured. He looked again to his right when his front bumper was even with the curbline and for the first time saw the defendant coming east in the wrong lane at a high rate of speed. The jury could have found from his testimony that he had his car under such control that he could have stopped it before entering the eastbound lane. When he was hit by the defendant's eastbound car he was still in the westbound lane. His testimony that he had gone "about" twelve feet into the intersection, which he said was twenty-two to twenty-five feet wide, is not necessarily a contradiction of his earlier statement that he had not yet reached the middle of the street and that his car never passed the middle of the intersection.

This case is so close upon its facts to *Kaiser Co., Inc. v. American Individual Laundry Company,* 138 Pa. Superior Ct. 124, 10 A. 2d 64 (1939), that the same rule should govern it. In that case the defendant was traveling east in the westbound lane when the collision occurred. This court in an opinion by President Judge RHODES said (at pages 126-127, 10 A. 2d pages 65-66) : "Kaiser was not required to anticipate that defendant would be driving east through the intersection in the traffic lane used for westbound traffic . . . A party is not bound to guard against the want of ordi-

nary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act . . . The fact that defendant's truck was approaching the intersection from Kaiser's right did not give the former an absolute right to cross the intersection regardless of the circumstances . . . when Kaiser approached the intersection it was his duty to first ascertain whether there was any traffic coming from the east on Clifford Street, which was to his left, and if he found it reasonably safe to proceed into the westbound traffic lane of Clifford Street it became his duty to look to the right for traffic coming from the west; and it was especially his duty to look to his right before proceeding to cross the center into the eastbound lane . . ." This court said further (at page 126, 10 A. 2d at page 66) : "This was not a case, in our judgment, where contributory negligence on the part of Kaiser was so clearly revealed that fair and reasonable individuals could not disagree as to its existence; it is only in such cases that contributory negligence may be declared judicially . . ."

The court below attempted to distinguish the *Kaiser* case because the opinion stated that the jury was justified in finding that the plaintiff's driver, having looked to the right, was unable to see the defendant's approaching vehicle because it was proceeding in the wrong lane. However, while the driver in that case testified that he looked to his right before entering the intersection, he was proceeding at 15 to 20 miles per hour, and, after the statement referred to by the court below, the opinion went on to say that there was no lack of vigilance on his part in entering the path of traffic coming from his left, where the defendant had no right to be, and that the accident would not have occurred if the defendant truck had been in the proper

lane of traffic. Here the plaintiff was proceeding at a speed of only 10 miles per hour. He looked to his right before entering the intersection but did not see until too late that the defendant was in the wrong lane. He was not testing an obvious danger and his failure to see the defendant sooner was due, not to lack of vigilance on his part, but rather to the necessity of directing his attention to the left, where his range of vision was limited, as he approached the intersection. The jury could have found that he had his car under such control that he could have avoided the accident if it had not been for the defendant's negligence in driving in the wrong lane at an excessive rate of speed. The principles laid down in the *Kaiser* case are controlling here and the case was properly submitted to the jury by the trial judge.

The judgment is reversed and is hereby entered for the plaintiff on the verdict.