521 A.2d 459

Richard C. ASKEW, An Incompetent, by Carol ASKEW, His Guardian, and Carol Askew, Individually, Appellant,

v.

Darrel J. ZELLER and Ulla Olsson, Commonwealth of Pennsylvania, Department of Transportation and Camp Hill Borough, Appellees.

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed Feb. 19, 1987.

36

Lewis S. Kunkel, Jr., Harrisburg, for appellant.

P. Daniel Altland, Harrisburg, for Olsson, appellee.

Sarah S. Smith, Harrisburg, for Dept. of Transp., appellee.

Virginia W. Hersperger, Carlisle, for Camp Hill, appellee.

Before WIEAND, BECK, and WATKINS, JJ.

BECK, Judge:

Richard Askew was driving his motorcycle when he was severely injured. His wife, appellant Carol Askew [1], as guardian for Richard, now an incompetent, and on her own behalf brought a trespass action against the two drivers involved in the accident, appellees, Darrell J. Zeller and Ulla Olsson. The Askews allege that both drivers were negligent and their negligence was the legal cause of Richard's injuries. Olsson moved for summary judgment alleging no genuine issue as to any material fact existed and that she was entitled to summary judgment as a matter of law. The court granted Olsson's motion and the Askews appeal. We affirm.

> In reviewing summary judgment, the Court must accept as true all well-pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an

---

1. Carol and Richard Askew will be referred to as the Askews or appellant.

38

absence of genuine factual issues, but also an entitlement to judgment as a matter of law.

*Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983).

The accident occurred at a T-shaped intersection. Olsson was stopped in a long line of traffic traveling west on State Street in the Borough of Camp Hill. Zeller had been traveling east on State Street and was waiting at the intersection to turn left onto Sixteenth Street. The intersection was clear. When Zeller indicated his intention to turn left onto Sixteenth Street, by flashing his directional signal, Olsson signaled him by waving her hand from left to right. She did not look to her right or her rear before making the hand signal. From his car Zeller had a clear view of approaching traffic on Olsson's right. Askew, like Olsson, was travelling west on State Street and was in the lane to the right of Olsson. He intended to proceed straight through the intersection. Zeller made a smooth, continuous turn in front of Olsson onto Sixteenth Street. Askew proceeded straight through the intersection and struck the side of Zeller's vehicle. Olsson's vehicle was not physically involved in the accident.

## I.

The Askews contend that Olsson acted negligently by signaling Zeller to turn left without first determining whether another vehicle was about to occupy the lane to her right. They argue that Olsson assumed a duty of care to Askew when she voluntarily and gratuitously signaled to Zeller.

Their argument is premised on Section 324A, subsections (a) and (c) of the Restatement (Second) of Torts (1965), which imposes a duty to act with due care upon an individual performing a gratuitous undertaking:

§ 324 A. Liability to Third Person for Negligent Performance of Undertaking.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard,* 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922).

The Pennsylvania Supreme Court first considered Section 324A in *Cantwell v. Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984). In *Cantwell,* the court noted that the essential provisions of this section have been the law in Pennsylvania for many years. The *Cantwell* court interpreted the scope of Section 324A as follows:

In order to state a cause of action under § 324A, a complaint must contain factual allegations sufficient to establish the legal requirement that the defendant has undertaken "to render services to another which he should recognize as necessary for the protection of a third person".... This is essentially a requirement of foreseeability.... Thus, even if the defendant has undertaken to render a service to another, and the plaintiff (third person) has suffered physical harm, if there was no reason that the defendant should have foreseen that his actions were necessary for the protection of the plaintiff, no cause of action will lie under § 324A.

506 Pa. at 41, 483 A.2d at 1353–54 (citation omitted).

■ For decisional support of their position, the Askews cite *Farley v. South Eastern Pennsylvania Transportation Authority,* 279 Pa.Super. 570, 421 A.2d 346 (1980) (Watkins, J.; Cercone, P.J., and Hoffman, J. concurring in the result). We note that *Farley* is not binding precedent because it is not the view of a majority of the panel. *Trust of Bachman,* 338 Pa.Super. 546, 488 A.2d 27 (1985). Unless

an issue in a panel decision commands a majority both as to the result and as to rationale, the principle embodied in the issue is not precedential. We, therefore decline to consider *Farley.*

■ There are two major views in the United States relating to the liability of a signaling motorist. The first holds that the signal cannot reasonably be interpreted as anything other than a yield of the right of way or a gesture of courtesy, and without more the signaling motorist is not liable as a matter of law. *Shank v. Government Employees Ins. Co.,* 390 So.2d 903 (La.1981); *Dix v. Spampinato,* 278 Md. 34, 358 A.2d 237 (1976); *Van Jura v. Row,* 175 Ohio St. 41, 191 N.E.2d 536 (1963); *Devine v. Cook,* 3 Utah 2d 134, 279 P.2d 1073 (1955); *Nolde Bros., Inc. v. Wray,* 221 Va. 25, 266 S.E.2d 882 (1980).

The second view holds that it is for a jury to determine the significance reasonably attributable to a motorist's hand signal. *Cunningham v. National Service Industries,* 174 Ga.App. 832, 331 S.E.2d 899 (1985); *Sweet v. Ringwelski,* 362 Mich. 138, 106 N.W.2d 742 (1961); *Thelen v. Spilman,* 251 Minn. 89, 86 N.W.2d 700 (1957); *Miller v. Watkins,* 355 S.W.2d 1 (Mo.1962); *Riley v. Board of Education,* 15 A.D.2d 303, 223 N.Y.S.2d 389 (1962); *Armstead v. Holbert,* 146 W.Va. 582, 122 S.E.2d 43 (1961).

Both views have been considered in *Frey v. Woodard,* 565 F.Supp. 386 (E.D.Pa.1983), *rev'd,* 748 F.2d 173 (3d Cir.1984). The trial court, sitting in Pennsylvania and applying North Carolina law, adopted the view that the signaling motorist was not liable as a matter of law. In that case, the driver signaled pedestrians to cross in front of him. Another vehicle passed the signaling driver and struck the pedestrians. The trial court granted the driver's motion for summary judgment finding that the hand signal could not reasonably be relied upon for any purpose other than to indicate that the driver was yielding his right of way. 565 F.Supp. at 388. The Third Circuit, however, reversed and held that when reasonable minds could differ regarding the meaning of a hand signal, it was impermissible for the trial

court to grant summary judgment. The question was one for the trier of fact. 748 F.2d at 176. We find the Askews' argument and the Third Circuit's reasoning in *Frey* to be persuasive and would hold that where reasonable minds could differ as to the meaning of the signal the question becomes one for the trier of fact.

In order to determine if the signaling motorist's action was something other than a mere courtesy or a yielding of the right of way, it is necessary for the trier of fact to examine the circumstances surrounding the signaler's act. The trier of fact must assess factual issues such as the type of signal the motorist made, what reasonable interpretation the other driver could have given the signal, whether the signaler's act was negligent and whether the signaler's act was the legal cause of the accident. These are the kinds of inquiries the jury must address. We therefore conclude that the better view is that the evaluation of the signaler's act is usually a question for the trier of fact. Of course, where the facts are clear and, based on the facts, no inference of negligence may reasonably be drawn, the judge may rule as a matter of law that the signaler is not liable.

## II.

However, in the instant case the trial court's first line of inquiry is causation; i.e. whether the driver's signal can support an inference that the act of signaling was the legal cause of the victim's injury. It is only after this inquiry has been addressed that it is proper to address the question of whether the motorist acted negligently in signaling. In this case, the court determined that the facts could not support legal causation and granted summary judgment on that basis. We find that the trial court's determination was correct.

It is the function of the court to determine the questions of causation in cases in which a jury could not reasonably differ. Restatement (Second) of Torts § 434(1)(c). As Dean Prosser explains:

If the facts bearing upon the issue of causation in fact are not in dispute and reasonable persons could not differ about the application of the legal concept of causation in fact, the court determines that issue. But if reasonable persons might differ, either because relevant facts are in dispute or because application of a legal concept (such as a "substantial factor" formulation) is an evaluative determination as to which reasonable persons might differ, the issue is submitted to the jury with appropriate instructions on the law. . . .

Prosser, The Law of Torts § 45 (5th ed. 1984).

■ The focus of our inquiry is therefore whether the court was correct in finding as a matter of law that legal causation was not present. Where relevant facts are not in dispute and the remoteness of the causal connection between the negligence of the original actor and the injury is so clear, the issue becomes one of law. *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970). Summary judgment is proper where facts are undisputed and only one conclusion may reasonably be drawn from them. *Gans v. Mundy*, 762 F.2d 338 (3d Cir.1985) and *Colloi v. Philadelphia Electric Co.*, 332 Pa.Super. 284, 481 A.2d 616 (1984).

■ Although the Askews have asserted the existence of a dispute regarding Zeller's interpretation of Olsson's signal, nothing in the record supports their assertion. Zeller's own statements remain uncontradicted.

In his deposition, Zeller clearly and unequivocally stated that he interpreted Olsson's signal only to mean she would remain stopped and he could proceed in front of her. He maintained that he never relied on Olsson's signal as an indication that no other traffic was approaching the intersection. Zeller may have acted negligently in making the turn, but the act of turning does not reasonably permit an inference that he relied on Olsson's signal as a representation that it was safe to make a complete turn. As to Zeller, Olsson's hand signal had no connection with the accident. Even if we were to conclude, which we do not, that Olsson's act of signaling was negligent, her act was not in the

legally responsible chain of events that caused the accident that injured Askew. Therefore, the trial judge was correct in awarding summary judgment in her favor.

## III.

The Askews also rely on the *Nanty-Glo* rule, *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), to argue that summary judgment is inappropriate. We quote with approval from the disposition of this issue by the trial court:

> The Nanty-Glo rule maintains that one is not entitled to a directed verdict if one's position depends on the uncontradicted oral testimony of one's own witnesses. The other party is entitled to have a jury evaluate the credibility of the witnesses, even if their testimony is not contradicted, and the jury may choose not to believe their testimony. When applied to a motion for summary judgment, the Nanty-Glo rule prevents a court from granting the motion solely on the basis of oral testimony or undocumented affidavits of the moving party's witnesses. *Bremmer v. Protected Home Mutual Life Insurance Co.*, 436 Pa. 494, 260 A.2d 785 (1970).
>
> Plaintiff's argument would be well-taken if Olsson's motion depended on her own testimony or the testimony of one of her witnesses. Here, however, Olsson relies on the testimony of Zeller, whose interests in the action are adverse to her own. The uncontradicted deposition testimony of a co-defendant, who is an adverse party and equally liable to the plaintiff, is a sound basis for summary judgment. *Reading Company v. United States Fidelity and Guaranty Co.*, 64 Pa.D. & C.2d 476 (Phila.1973) *aff'd per curiam*, 228 Pa.Super. 747, 311 A.2d 335 (1973).

Trial court op. at 9–10.

■ The Askews argue that if no cross complaints are filed between co-defendants, there is no issue between them and the parties. Therefore it is important to note that in *Reading Company,* the court properly refers to the co-defendants as adverse even though there were no cross com-

plaints filed between them. The *Nanty-Glo* rule is not applicable in the instant case.

Order granting summary judgment affirmed.

WIEAND, J., files a concurring opinion.

WIEAND, Judge, concurring:

I concur in the result achieved by the majority and join that portion of the majority opinion which holds that Olsson's act of signalling to Zeller, as a matter of law, was not the legal cause of Askew's injury. In light of the majority's resolution of the causation issue, however, I find it unnecessary to determine whether Olsson owed any duty of care to Askew, who was not the driver of the crossing vehicle to whom the signal was given, and who was operating his motorcycle on the shoulder of the road and passing stopped vehicles on the right. Therefore, I do not join the portion of the majority opinion which seeks to address this issue.