600 A.2d 965

**Judith Oliver JOHNSON, Individually and as Administratrix of the Estate of John Van Wirt Johnson, Appellant,**

**v.**

**William JOHNSON, Steck Johnson, Jay Schultz, Avery Schultz, L. Jose Gonzales, Eric Schultz, Richard Johnson, Edward Johnson, Walter Benner, Edwin Johnson, Peter Johnson, David Johnson, Donald Johnson and David Schultz.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1991.

Filed Dec. 13, 1991.

Terry W. Light, Lewisburg, for appellant.

John E. Person, III, Williamsport, for William & Steck Johnson, appellees.

Joey A. Storaska, Sunbury, for W. Benner, appellee.

Jeffrey H. Quinn, Yardley, for Peter & David Johnson, appellees.

Robert P. Wilkison, Sunbury, for Edwin Johnson, appellee.

Michael E. Koll, State College, for Avery Schultz, appellee.

Before POPOVICH, HUDOCK and CERCONE, JJ.

CERCONE, Judge.

This is an appeal from the order of the Court of Common Pleas of Union County dated November 30, 1990, granting six various motions for summary judgment. This timely appeal followed. We affirm.

This action arose from a tragic hunting accident involving appellant's decedent, John Van Wirt Johnson, a/k/a Van Johnson. Decedent and appellees were members of the Paddy Mountain Boys Rod and Hunting Club. The club members gathered on December 1, 1985 to prepare for the annual hunting season which began the following day. To this end, the senior members of the club conducted a safety meeting. The following day, the members engaged in hunting activities without incident.

On December 3, 1985, the group once again conducted their hunting expedition. The morning hunt began with a group watch for deer. Later in the afternoon, the appellees, along with Van Johnson, formed as a group and engaged in a technique known as a "drive." As the trial judge explained this term:

> The purpose of the drive was to herd deer toward the watchers, members of the club who would be posted at the likely flight path of decamping deer. The drivers, other members of the club, would walk regimentally toward the watchers, a drill which presumably would encourage the deer to depart in the direction of the watchers.

Lower Court Opinion 11/30/90 at 2. Lyon Johnson, minor son of defendant Edward Johnson and nephew of the deceased, also attended and was selected to be a driver. In the process of conducting the drive, young Lyon fired two shots. One of these shots fatally wounded the decedent while both were attempting to drive the deer.

Appellant Judith Oliver Johnson filed the instant action in trespass, individually and as administratrix of the estate of Van Johnson. She sought judgment against the appellees,

individually, for failing to adequately control and supervise Lyon Johnson. She named as defendants William Johnson, William Steck Johnson, Jr., Jay Schultz, Avery Schultz, L. Jose Gonzales, Eric Schultz, Richard Johnson, Edward Johnson, Walter Benner, Edwin Johnson, Peter Johnson, David Johnson, Donald Johnson and David Schultz. These defendants/appellees were the members of the hunting club present on the drive which is the subject of controversy in this litigation. No lawsuit was filed against Lyon Johnson for shooting the decedent.

The trial judge initially granted preliminary objections demanding that plaintiff file a more specific complaint. After plaintiff filed her amended complaint, the trial judge denied preliminary objections and the defendants answered and filed new matter. After conducting extensive discovery, defendants filed six motions for summary judgment alleging that they owed no duty to protect Van Johnson from harm or to control the actions of Lyon Johnson. The lower court agreed finding that, with the exception of Edward Johnson, Lyon's father, no defendant owed a duty to plaintiff's decedent to protect him from the actions of Lyon Johnson. The trial judge dismissed appellant's complaint as against all co-defendants except Edward Johnson. The trial court reasoned that Edward Johnson had a duty to control the actions of his child. Restatement (Second) of Torts § 316 (a parent owes a duty to control the conduct of his child). Accordingly, he allowed appellant's cause of action against the father to proceed to trial.[1]

On appeal, plaintiff proffers one question for our consideration:

should summary judgment have been entered in favor of all moving defendants where the moving parties support their motions with deposition testimony of themselves and other parties?

While we agree with appellant that the testimony given in support of each motion for summary judgment is inade-

1. The claim against Edward Johnson is not before us in this appeal.

quate to prove absence of material fact, we affirm the order of the trial court granting summary judgment because appellant has not alleged a cause of action upon which relief can be granted.

> A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. Rule 1035(b).... In passing upon a motion for summary judgment the court must examine the record in a light most favorable to the nonmoving party.... It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.... Any doubt must be resolved against the moving party.... The court, in ruling on a motion for summary judgment, must ignore the controverted facts contained in the pleadings.... The court must restrict its review to the material authorized by Rule 1035 to be filed in support of and in opposition to the motion for summary judgment and *only* those allegations in the pleadings that are uncontroverted.

*Samarin v. GAF Corp.*, 391 Pa.Super. 340, 346–47, 571 A.2d 398, 401–02 (1989) *quoting Washington Federal Savings and Loan Association v. Stein,* 357 Pa.Super. 286, 515 A.2d 980 (1986) (citations omitted). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988). Furthermore, failure to raise the issue of inadequate support of a motion for summary judgment does not result in waiver of that issue since the trial judge has a duty to deny such motions even if the opposing party has not responded. *Garcia v. Savage,* 402 Pa.Super. 324, 328, 586 A.2d 1375, 1377 (1991).[2]

---

**2.** Certain defendants have argued that appellant has waived the *Nanty-Glo* argument, addressed *supra,* for failure to raise it in the lower

With our standard of review in mind, we turn to appellant's argument in support of reversal. Appellant maintains that the six various motions for summary judgment were inadequately supported by deposition testimony contrary to the requirements set forth by our supreme court in *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932).

In *Nanty–Glo*, the plaintiff, a municipality, sued a surety company which issued a bond on its tax collector for amounts the tax collector misappropriated. At trial, the plaintiff introduced the testimony of the tax collector himself and a county clerk who testified as to the notice given the surety bond holder. The surety company offered no evidence. The trial court then granted the plaintiff's motion for binding instructions and a directed verdict since the evidence was uncontradicted. Our supreme court reversed the decision of the trial court holding that although the evidence was uncontradicted, it was the province of the jury to consider the credibility of the witness. *Id.*, 309 Pa. at 237–38, 163 A. at 524.

Although *Nanty–Glo* was decided in the context of a directed verdict, our courts have frequently applied its holding to motions for summary judgment. *Garcia*, 402 Pa.Super. at 329–30, 586 A.2d at 1377–78. As our distinguished Judge Beck summarized:

> [T]he general rule that flows from *Nanty–Glo* is that summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact.

*Id.*, 402 Pa.Superior Ct. at 330, 586 A.2d at 1378.

Our courts, however, have developed an exception to the *Nanty–Glo* rule where the moving party supports his motion for summary judgment with admissions of the opposing party or his witnesses. *Id.* 402 Pa.Super. *at* 330 n. 3, 586 A.2d at 1378 n. 3; *Askew by Askew v. Zeller*, 361 Pa.Super.

court. Based on our standard of review, however, we find the issue properly before us.

35, 43, 521 A.2d 459, 464 (1987). In *Askew,* the plaintiff's husband was seriously injured when his motorcycle was hit by a vehicle turning into his lane. Defendant Zeller turned into Askew's lane when co-defendant Olsson waved him to turn. Plaintiff therefore contended that Olsson acted negligently in waving Zeller to turn. Olsson filed a motion for summary judgment relying on Zeller's deposition testimony whereby he stated that he did not rely on Olsson's signal when he turned. The trial court granted summary judgment in favor of Olsson. *Id.,* 361 Pa.Superior Ct. at 37, 521 A.2d at 460–61. A panel of this court affirmed the decision holding that "the uncontradicted deposition testimony of a co-defendant, *who is an adverse party,* and equally liable to the plaintiff, is a sound basis for summary judgment." *Id.,* 361 Pa.Superior Ct. at 43, 521 A.2d at 464 (emphasis added), *citing with approval Reading Company v. United States Fidelity and Guaranty Co.,* 64 Pa.D. & C.2d 476 (Phila.1973) *affirmed per curiam,* 228 Pa.Super. 747, 311 A.2d 335 (1973).

■ In each of the six motions for summary judgment filed in the instant case, the moving defendants relied upon testimony from other co-defendants. Before the parties may properly rely on such testimony, however, we must determine that these co-defendants were adverse parties. After careful consideration of the record before us, we have concluded that these co-defendants were not adverse.

Defendant/appellee Walter Benner filed a motion for summary judgment arguing that there was no legal duty imposed upon him to control the actions of Lyon Johnson. In support of this theory, Benner relies on appellant's responses to request for admissions, his own deposition testimony, and that of Lyon Johnson, Richard Johnson, Edwin Johnson and Horace Schultz. Benner testified that he was part of the drive but did not maintain any control over Lyon Johnson. Richard Johnson testified that the decedent, Van Johnson, assumed responsibility for young Lyon.

Co-defendants Jay Schultz, Jose Gonzales and Richard Johnson argued that they owed no duty to the decedent to

control Lyon Johnson's conduct during the hunt, but proffered no evidence in support of their motion. Instead, they relied on the witness testimony proffered by Walter Benner in his motion for summary judgment. Co-defendants David and Peter Johnson filed their motion arguing that neither of them were involved in planning or conducting the drive. For this proposition, they relied on the testimony of Lyon Johnson. They also relied on the testimony of co-defendants Richard Johnson and Edwin Johnson who stated that Van Johnson had assumed responsibility over Lyon during the drive.

In his motion for summary judgment, defendant Edwin Johnson argued that he had no duty to control young Lyon Johnson's conduct during the drive. This particular defendant produced no evidence to support his motion.[3] Defendants Avery Schultz, David Schultz and Donald Johnson filed a joint motion for summary judgment. Through the deposition testimony of co-defendants Richard Johnson, Jose Gonzales, Edwin Johnson, Eric Schultz, and Lyon Johnson, they maintained that Van Johnson was the only person to assert control over Lyon Johnson. Defendants Avery Schultz and William Steck Johnson testified that they were away from the drivers and therefore asserted no control over Lyon Johnson. Finally, co-defendants William S. Johnson and William Steck Johnson, Jr. argued that they had no duty to protect Van Johnson from the acts of Lyon Johnson. To this end, they also incorporate the motion for summary judgment filed by Walter Benner.[4]

The evidence appellees proffered in support of summary judgment is insufficient to support findings that no material fact was at issue. Each party relies on the testimony of

3. The failure to support a motion for summary judgment with admissions or deposition testimony is clearly insufficient to demonstrate absence of material fact.

4. All parties refer to appellant's answers to defendant Edwin Johnson's request for admissions to support their motions for summary judgment. We have reviewed these answers and find no material admissions exculpating the defendants from any alleged duty owed to the decedent. Appellant's admissions relate only to the joint activities of the Paddy Mountain Boys Rod and Hunting Club.

other co-defendants as well as his own testimony to support the common argument that he owed no duty to the decedent. These are not the types of adverse parties which this court has found can overcome application of the *Nanty–Glo* rule. Further, no defendant is antagonistic to one another. No defendant has exculpated himself from liability by demonstrating that another defendant, in fact, maintained a duty to the decedent. Instead, the parties either allege that either no duty was owed to protect Van Johnson, or that Van Johnson assumed that duty himself. In fact, certain parties to the action rely on the motions filed by other defendants to the action to support their own position. Certainly such conduct is not indicative of the co-defendants being adverse.

■ We are also constrained to find that the mere fact that certain of the appellees have filed cross-claims against the other defendants is not dispositive of whether they are adverse parties. In *Askew, supra,* this court held that failure to file cross-complaints between co-defendants did not compel the co-defendants to be treated as non-adverse parties. *Askew,* 361 Pa.Super. at 43, 521 A.2d at 464. In order to rely on the testimony of co-defendants, the moving party must demonstrate that there is actual adversity among the defendants, so as to make any testimony by the co-defendant "unconditional surrender." *Garcia,* 402 Pa.Super. at 330 n. 3, 586 A.2d at 1378 n. 3. We therefore find that the *Nanty–Glo* rule applies in this instance and precludes the lower court from relying on this testimony to find no issue of material fact.

■ Our analysis of this problem must not end here, however, for it is axiomatic that we may affirm the summary judgment if it was proper for any reason. *Mucowski v. Clark,* 404 Pa.Super. 197, 201, 590 A.2d 348, 350 (1991); *Jones v. P.M.A. Ins. Co.,* 343 Pa.Super. 411, 413 n. 1, 495 A.2d 203, 204 n. 1 (1985) (appellate court may affirm action of trial court for reasons other than those given by trial court in support of order).

In her brief opposing summary judgment, plaintiff/appellant advanced two theories of relief: (1) that each member of the hunting party had a duty to ascertain whether each hunter was physically and mentally fit to engage in the hunt, and (2) that each member had a duty to withdraw any hunter from the hunt whom he knew or should have known was unfit or was potentially unfit to conduct a safe hunt. In support of these legal theories, the appellant argued that Restatement (Second) Torts § 308 should be implied to impose a duty on each hunter to ascertain whether their fellow hunters are mentally and physically able to safely participate in the hunt. Appellant also argued that the structure of the Paddy Mountain Boys Rod and Gun Club imposed a special relationship cognizable under Restatement (Second) Torts § 315 to impose liability on each member of the club for failure to constrain the actions of Lyon Johnson. For the following reasons, we find appellant's contentions meritless.

Section 308 of the restatement discusses the principle of negligent entrustment in the following terms:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965); *see Burkhart v. Brockway Glass Co.*, 352 Pa.Super. 204, 507 A.2d 844 (1986), *allocatur denied*, 514 Pa. 615, 521 A.2d 930 (1987). This definition of negligent entrustment is most commonly applied in cases where a parent allows a child to utilize a dangerous weapon or an automobile, and an injury results. *See id.*

While section 308 advances a general principle regarding the type of conduct which will support a finding of negligence, appellant must still establish that the appellees owed a duty to her decedent which is recognized at law. Restatement (Second) of Torts, Scope Note Chapter 12,

Topic 4 (1965); *Cf. Moore v. Commonwealth Department of Justice,* 114 Pa.Commw. 56, 538 A.2d 111 (1988) (Restatement (Second) of Torts § 302 does not in itself create a duty rather it defines what acts may constitute negligence, assuming that a duty is independently established).[5]

▮ In the case *sub judice,* appellant suggests that we find that appellees owed a duty to Van Johnson to protect him from potential harm caused by any member of the hunting group. We disagree. Appellant is not alleging that appellees acted in a negligent manner. Rather she alleges that they failed to act when they were obligated to do so. The activity of hunting, in itself, cannot suffice to impose a duty upon each hunter to protect others solely because it is inherently dangerous. The mere association of members in this instance is also insufficient to impose liability.

▮ Moreover, even if we were to assume that a duty existed toward plaintiff's decedent, we would still be compelled to find that plaintiff has failed to prove her claim under section 308. The Comments to section 308 enunciate a two-part test to apply in determining whether the third person is under the control of the actor and state:

The words "under the control of the actor" are used to indicate that *the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.*

Restatement (Second) of Torts § 308 (1965), Comment a (emphasis added). In support of her claim under section 308, appellant proffers the alleged admission of appellee

---

**5.** Contrary to appellees' contentions, section 308 does not impose vicarious liability upon the members of the hunting club. Section 308 imposes liability on a defendant because of his own acts in relation to instruments or activities under his control. *Mendola et al. v. Sambol,* 166 Pa.Super. 351, 353, 71 A.2d 827, 828 (1950).

Richard Johnson that he considered taking Lyon Johnson's gun away from him because he was acting erratically.[6] Even when taken in the light most favorable to plaintiff, this admission merely tends to prove one part of the two part test enunciated in the comments to Restatement (Second) of Torts § 308, *supra* at p. 970. The proffered statement merely indicates that Richard Johnson had reason to believe that he could prevent Lyon Johnson from hunting. The record is devoid of any indication that Richard Johnson was in control of Lyon Johnson's gun as contemplated by section 308 of the Restatement. Thus, neither Richard Johnson nor any other member of the hunting club was in the position of sole arbiter, in the sense of section 308, of whether Lyon Johnson was permitted to engage in hunting activities or possess a gun for purposes of hunting. As the lower court properly found, young Lyon's father was the only person with this capacity. The trial judge accordingly refused to dismiss Lyon's father, Edward Johnson, from this suit.

Appellant also seeks relief under Restatement (Second) of Torts § 315 (1965). Section 315 provides:

6. Appellant directs us to the following deposition testimony to support her allegation:

Q (by Attorney Charles Fonzone):
And you go on to say that Richard Johnson then told me days after the funeral that it was the 13 year old boy's gun. Now what are you relating to us there?

A (by appellant):
I don't remember saying gun. I remember him saying that it was a thirteen year old boy.

Q: Then the next sentence says later that Van wanted, and I imagine the word ["to"] is missing, to take the gun away because he was acting up for days. Now who said that to you?

A: Richard.

Q: Now Richard told you that Van wanted to take Lyon's gun away from him?

A: I don't remember if he said Van wanted to or we wanted to. Deposition testimony of Judith Johnson at 50. This alleged statement which Mrs. Johnson attributed to appellee Richard Johnson in no way related to Lyon Johnson's hunting ability or to his qualifications as a licensed hunter. The description of Lyon's conduct, which is described as "acting up," lacks the specificity necessary to cast doubt on Lyon's competence to hunt.

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) Torts § 315 (1965). Comment c to section 315 states:

> The relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316–319. The relations between the actor to control the conduct of third persons for the protection of the other are stated in §§ 314A and 320.

Our review of the pertinent sections of the Restatement imposes no duty on the appellees to control Lyon Johnson or protect Van Johnson from harm. Sections 316–319 do not impose duties on the appellees to control Lyon Johnson's conduct.[7] Furthermore, sections 314A and 320, which impose duties to protect certain persons, have no application in the instant matter.[8] Therefore, appellant cannot maintain a cause of action under Restatement (Second) Torts § 315.

---

**7.** Section 316 imposes a duty on a parent to control the conduct of his child. This is the duty which the court imposed on Edward Johnson by refusing to dismiss this suit against him. Section 317 imposes a duty for an employer to control the conduct of his servants. Section 318 promulgates a duty on landowners to control the conduct of licensees and section 319 creates a duty to control the actions of a third person with dangerous propensities when the actor has taken charge of the third person.

Sections 316, 317 and 318 do not apply in this instance. Further, the Pennsylvania courts have traditionally applied section 319 to cases involving mentally ill patients and prisoners. *See Vattimo v. Lower Bucks County Hospital, Inc.,* 502 Pa. 241, 258, 465 A.2d 1231, 1240 (1983) (Nix, J. concurring and dissenting); *Moore v. Commonwealth Department of Justice, supra.* Again, however, there is no evidence that any of the appellees actually took charge of Lyon Johnson in order to trigger application of section 319.

**8.** Section 314A lists certain special relations which give rise to a duty to aid or protect third persons, including duties on common carriers, innkeepers and possessors of land. Section 320 applies to persons

■ Finally, we take note of the allegations in appellant's complaint which mirror the language of pertinent sections of the Pennsylvania Games and Wildlife Code which state:

**Unlawful acts concerning licenses**

**(a) General rule.**—Except as otherwise provided in this title, it is unlawful for any person to:

\* \* \* \* \* \*

(8) Use firearms of any kind ... when hunting or trapping any game or wildlife or attempting to hunt or trap any game or wildlife if between 12 and 14 years of age, unless accompanied by a parent or a person 18 years of age or older serving in loco parentis or as guardian or some other family member 18 years of age or older.

34 Pa.C.S.A. § 2711. By its terms, the statute imposes liability on the offender, which in this case is the minor, Lyon Johnson. While section 2711 serves the purpose of ensuring that minors are being monitored, we cannot find that this section imposes a duty on a minor's colleagues to continuously monitor his activities absent their voluntary assumption of such a duty. At no time has appellant alleged that the other hunters voluntarily assumed a duty to control Lyon Johnson. Therefore, section 2711 affords appellant no relief.

Order affirmed.

who take custody over another so as to impose a duty to protect that person.