ERIE INSURANCE COMPANY,
Appellant

v.

Ruth Ann WILLIAMS and Gary
Williams, Appellees.

Superior Court of Pennsylvania.

Argued May 14, 2003.

Filed June 29, 2004.

Reargument Denied Sept. 3, 2004.

Robert T. Panowicz, Wilkes–Barre, for appellant.

Neil T. O'Donnell, Wilkes–Barre, for appellee.

Before: STEVENS, LALLY–GREEN, and KLEIN, JJ.

STEVENS, J.

¶ 1 Appellant Erie Insurance Exchange (Erie) appeals from a judgment of the Court of Common Pleas of Luzerne County entered in favor of Appellees Ruth Ann and Gary Williams. We affirm.

¶ 2 This matter stems from an April 6, 2000 auto accident. On that date, a vehicle driven by Mrs. Williams was struck by a vehicle driven by James Mack, after Mrs. Williams made a left turn across traffic based on the hand signals of another driver who fled the scene. The insurance poli-

cy issued to Appellees by Erie made subject to binding arbitration disagreements over the right to recover uninsured or underinsured motor vehicle damages, and the amount of those damages. The policy also noted that in all other respects, the arbitration would follow the arbitration provisions of the Arbitration Act of 1927.[1]

¶ 3 Pursuant to the arbitration clause in the insurance policy, an arbitration hearing was held, and on January 30, 2002, the arbitration panel issued an order awarding Appellees two hundred thirty-seven thousand dollars ($237,000.00), based on the panel's conclusion that Appellees suffered damages in the amount of three hundred ninety-five thousand dollars ($395,000.00), but that Mrs. Williams was forty percent (40%) comparatively negligent in causing the accident.

¶ 4 Erie responded by filing two petitions before the Court of Common Pleas of Luzerne County on March 1, 2002. The first, a petition to modify the arbitrators' award pursuant to 42 Pa.C.S.A. § 7315 and 5 P.S. § 171,[2] requested the trial court to reduce the award to two hundred thousand dollars ($200,000.00), the amount of uninsured motorist coverage available under Appellees' insurance policy. Appellees did not oppose modification of the award to comport with policy limits. Answer to Petition to Modify Arbitrators' Award, filed 3/25/02.

¶ 5 The second petition filed by Erie on March 1, 2002, titled "Petition to Modify and/or Correct the Arbitration Award Entered in the Above–Captioned Matter Pursuant to the Arbitration Act of 1927 for Mistake of Law," averred that the arbitrators erred in rendering their award for the following reasons:

1. That the female Respondent failed to produce legally sufficient evidence that would support her contention that she was entitled to rely on the "waving driver" as an indication that the roadway was safe to cross;

2. Even if the female Respondent was entitled to rely on the actions of the waving driver as an indication it was clear to cross. [sic] The Female Respondent had a nondelegable duty to determine that it was safe to make her left turn and her negligence precludes her recovery as a matter of law.

1. "In 1980, the Arbitration Act of 1927 was repealed and replaced with The Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. § 7301 et. seq., which now governs agreements providing for arbitration under the former Arbitration Act of 1927." *Scott v. Erie Insurance,* 706 A.2d 357, 359 (Pa.Super.1998).

2. Section 7315 of the Uniform Arbitration Act provides for modification or correction of an arbitration award by the court as follows:

(a) General Rule. On application to the court made within 30 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

(b) Confirmation of award.—If an application to modify or correct the award is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as made by the arbitrators.

(c) Alternative applications.—An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

42 Pa.C.S.A § 7315(a)-(c). These provisions were previously contained in 5 P.S. § 171.

Petition to Modify and/or Correct the Arbitration Award Entered in the Above–Captioned Matter Pursuant to the Arbitration Act of 1927 for Mistake of Law, filed 3/1/02 at 3. Based on the above alleged errors, the petition requested the trial court to "modify and/or correct the Award under 5 Pa. [sic] 171 to rectify the aforesaid mistakes of law so that the Award shall reflect a verdict in favor of [Erie]." *Id.* Appellees filed an answer and new matter disputing Erie's claims and asserting that it's "error of law" allegation amounted to nothing more than an attempt to rehash factual issues related to causation, which, Appellees maintained, were properly addressed and decided by the arbitrators. Answer and New Matter in Opposition to Petition to Modify and/or Correct Arbitrators' Award for Alleged Mistake of Law, filed 3/25/02.

¶ 6 On April 24, 2002, the Honorable Michael Conahan issued an order modifying the award to comport with the applicable policy limits. Order filed 4/24/02. Thereafter, on July 31, 2002, Judge Conahan heard oral argument on Erie's allegations that a mistake of law had occurred, and on August 7, 2002, he rendered a decision. An error occurred in the captioning of the August 7, 2002 order, however, so an amended order was issued on August 15, 2002, as follows:

> AND NOW, this 15th day of August, 2002, upon consideration of Erie's Petition to Modify and/or correct the Arbitration Award for Alleged Mistake of Law, and following oral argument conducted before the Court on Wednesday, July 31, 2002, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. The Court, having reviewed the record in this case and the Pennsylvania Superior Court decision in *Askew v. Zeller [and Olsson]*, 361 Pa.Super. 35, 521 A.2d 459 (1987)[3], specifically determines that Ruth Ann and Gary Williams clearly stated a cause of action upon which relief was properly granted in the context of the uninsured motorist hearing below;

2. Further, having stated a legally sufficient cause of action, the Court finds that the arbitration panel, as the "Trier of Fact" properly assessed factual issues, such as the type of signals the unidentified motorist made, what reasonable interpretation Ms. Williams gave those signals, whether the signaler's acts were negligent and whether the signaler's acts were the legal cause of the accident. In sum, the arbitration panel acted properly and appropriately exercised its discretion under Pennsylvania Law. That decision should not be disturbed on appeal; and

3. Accordingly, Erie Insurance Exchange has failed to sustain its weighty burden of proof in the context of this appeal, and the decision of the arbitration panel, entering a molded award of $237,000 which was previously reduced by stipulation of the parties to policy limits of $200,000, is hereby affirmed.

Amended Order filed 8/15/02.

¶ 7 Erie praeciped for entry of judgment on August 23, 2002, and judgment was entered that day in the amount of two hundred thousand dollars ($200,000.00). Order filed 8/23/02. Also on August 23, 2002, Erie appealed the trial court's August 7, 2002 order, as corrected by its August 15, 2002 amended order. Thereafter, on August 30, 2002, Judge Conahan

---

**3.** In *Askew,* Olsson gave a hand signal encouraging Zeller to turn, but when Zeller did so his car was struck by motorcyclist Askew, approaching from Olsson's right. *Askew,* 521 A.2d at 461.

ordered Erie to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b), and Erie did so on September 6, 2002, setting forth three issues.[4]

■ ¶ 8 Of the three issues raised, we find the final claim waived. In its appellate brief, Erie questions:

Did the Honorable Court err in failing to appropriately weigh the evidence of negligence of the female respondent versus any alleged negligence against the unknown driver?

Appellant's brief at 5. While this claim essentially corresponds with the second matter complained of in Erie's 1925(b) statement, it was not raised before the trial court by Erie's petition to modify and/or correct the arbitration award. As the statement of matters complained of on appeal asserts, Erie is claiming that:

[T]he majority of the [arbitration] panel inexplicably concluded that the Respondent was less negligent than the phantom driver who had no such duty. The trial Court never addressed this issue or provided any explanation or analysis of how the Respondent's violation of her statutorily mandated duty was less negligent than that of the phantom driver.

Pa.R.A.P.1925(b) statement at 1–2. Since the petition brought before the trial court did not raise this issue, Erie cannot complain that it was error for trial court to fail to address it. See Petition to Modify and/or Correct the Arbitration Award Entered in the Above–Captioned Matter Pursuant to the Arbitration Act of 1927 for Mistake of Law, filed 3/1/02. "A well-established rule in this Commonwealth is that issues not raised in the court below are waived and may not be raised for the first time on appeal." *City of Philadelphia v. Fraternal Order of Police*, 677 A.2d

1319, 1323 (Pa.Cmwlth.1996) (citations omitted) (Therein, although the City timely appealed an arbitration award to the common pleas court, the City did not raise before that court any issue regarding the grievance arbitrator's noncompliance with the PICA Act or related public policy considerations. As such, a panel of this Court held that the City waived those issues on appeal.); Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

■ ¶ 9 Erie's remaining two allegations assert that Judge Conahan erred in "affirming the decision of the arbitrators in that the testimony did not support the inference that the hand wave of the unknown driver was the legal cause of the accident," and erred "in not concluding that as a matter of law, the female respondent failed to establish by a totality of the circumstances that she was justified in relying on the signal from the unknown driver." Appellant's brief at 5.

■ ¶ 10 When reviewing a trial court's decision to affirm, modify or vacate an arbitration award arising from an insurance contract, we may reverse only for an abuse of discretion or an error of law. *Racicot v. Erie Insurance Exchange*, 837 A.2d 496, 499 (Pa.Super.2003) (*citing* 42 Pa.C.S.A. § 7302(d)(2); *Bowersox v. Progressive Casualty Ins. Co.*, 781 A.2d 1236, 1238 (Pa.Super.2001)). Here, as we noted above, the insurance policy at issue required that arbitration between the parties follow the arbitration provisions of the Arbitration Act of 1927. When such a policy provision exists, the trial court's standard of review in a proceeding to modify or correct the arbitration award is that set forth at Section 7302(d)(2) of the 1980 Arbitration Act. *Racicot*, 837 A.2d at 499 (*citing* 42 Pa.C.S.A. § 7302(d)(2) historical

4. Judge Conahan has filed a Rule 1925(a)    opinion.

note; *Nationwide Ins. Co. v. Calhoun*, 430 Pa.Super. 612, 635 A.2d 643, 646 (1993)).

> Pursuant to 42 Pa.C.S.A. § 7302(d), a statutory arbitration award will be modified or corrected where the award is contrary to law, but only in the following circumstances:
>
>> (i) The Commonwealth government submits a controversy to arbitration.
>>
>> (ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.
>>
>> (iii) Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.

*Cotterman v. Allstate Insurance Company*, 446 Pa.Super. 202, 666 A.2d 695, 698 (1995). Agreements to arbitrate expressly providing for arbitration under the 1927 Act (which provided for a "contrary to law" standard for review), are viewed as falling within section 7302(d)(iii), triggering paragraph (2) of Section 7302(d), which states:

> [A] court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S.A. § 7302(d)(2); *Cotterman, supra.* A judgment notwithstanding the verdict is properly granted only when, after it has viewed the evidence in a light most favorable to the verdict winner, the trial court concludes that either " 'the movant is entitled to judgment as a matter of law' or 'the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.' " *Cauthorn v. Owens*

*Corning Fiberglas Corp.*, 840 A.2d 1028, 1035 (Pa.Super.2004).

¶ 11 In supporting the decision to deny the petition to modify and/or correct the arbitration award, the learned trial judge discusses the appropriate standards of review, including the requirements for granting judgment notwithstanding the verdict, and specifically notes his conclusion that Erie failed to meet those requirements. 1925(a) Opinion at 4–5. The judge specifically found that Erie's claim regarding causation was not supported by the facts or the law, and concluded that the assertion that the arbitration panel did not consider the "threshold argument" was belied by the record. 1925(a) Opinion at 6–7. Judge Conahan additionally explained that under *Askew, supra,* which espouses a "totality of the circumstances" analysis, it is for the jury to determine the significance reasonably attributed to a motorist's hand signal. 1925(a) Opinion at 6.

> Upon review of the record, this Court simply cannot agree with Erie that the record "does not provide any objective basis that would justify Respondent's action of making a turn." In fact, an independent witness confirmed that under the same circumstances he to would have attempted the left hand turn. Similarly, the Court cannot agree with Erie that the record "fails to disclose objective evidence and identifiable circumstances that would support Respondent's reliance on the signaling driver." As developed during Erie's cross examination of Williams, she not only saw the identified motorist wave to her three times, repeatedly mouth to her "come on," but Williams observed the signaling motorist look in his rear view mirror to check whether any cars were coming. Finally, following the collision which Mr. Renfer confirmed occurred quite close to

the signaling motorist, that driver immediately absconded.

The arbitration panel rendered its determination, from a totality of the circumstances perspective, after considering the developed factual record and assessing witness credibility. This Court finds that the record contains a sufficient basis to support the allocation of negligence and the award entered by the arbitration panel.

1925(a) Opinion at 9.

¶ 12 Judge Conahan concluded that the arbitration award was neither contrary to law nor such that had it been a jury verdict the court would have entered a different judgment or a judgment notwithstanding the verdict, therefore he denied Erie's petition to modify and/or correct the arbitration award, and affirmed that award in the Williams' favor. Based on our review of the record and applicable case law, we find no abuse of discretion or error of law in Judge Conahan's actions. *Racicot, supra; Bowersox, supra; Cotterman, supra;* 42 Pa.C.S.A. § 7302(d)(2).

¶ 13 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 14 Affirmed.

¶ 15 KLEIN, J., files a dissenting opinion.

KLEIN, J., Dissenting.

¶ 1 This is an appeal from a split arbitration panel. It is also a case of first impression in Pennsylvania. The issue is whether a driver who makes a left-hand turn proceeding against two lanes of traffic can, as a matter of law, be less negligent than a driver who waves the turning driver to proceed. Two of the arbitrators found the "turning" driver can be, and found the "waving" driver to be 60% responsible for the accident. The dissenting arbitrator said the driver making the left-hand turn, without independently looking for oncoming traffic (and in violation of 75 Pa.C.S. § 3322—vehicle turning left) is, as a matter of law, at least 51% negligent with respect to the "waving" driver. I agree that a driver making a left-hand turn into a lane where he or she cannot immediately discern oncoming traffic has a nondelegable duty to yield the right of way and so as a matter of law is more negligent than the "waving" driver. Therefore, I respectfully dissent.

¶ 2 The majority avoids confronting this issue, as they find it waived. I disagree. In Erie's Petition to Modify and/or Correct, the claimed the following:

Even if the female Respondent was entitled to rely on the actions of the waving driver as an indication it was clear to cross, the female Respondent had a nondelegable duty to determine that it was safe to make her left turn and her negligence precludes her recovery as a matter of law.

The only fair reading of that paragraph is that even were the "waving" driver negligent, the female Respondent was more than 50% negligent, since that is the only way her negligence would preclude her "as a matter of law." Certainly since that is what the dissenting arbitrator held, all parties were aware that that was Erie's claim.

¶ 3 In reaching the merits, I first note that there are basically three methods of dealing with a factual scenario such as this. The first is that a waving driver is never signaling that "all is clear" but is simply yielding right of way to the turning driver; second, the determination of the effect of the signaling driver is up to the jury to determine; and third, the signaling driver may be negligent, but that negligence cannot be greater than the statutorily created duty imposed on the turning driver to ensure all is clear before proceeding. I

will discuss all three of these later in this dissent, but background information is first required.

¶ 4 Under the Arbitration Act of 1927, an arbitration award may be vacated if the award was based upon an error of law. The majority and the trial court in this matter have found that there was no error of law in determining that Williams was justified in relying upon the "waving" driver to make her left-hand turn. However, justification for such an action cannot be determined in a vacuum and must, therefore, be determined in light of statutory interpretation and case law.

¶ 5 The trial court, in commenting upon Williams' "justification," states simply that there was no error of law under the totality of circumstances. No case law is specifically cited to support this notion of justification. The majority, in determining that the trial court had committed no abuse of discretion or error of law, relies on *Askew v. Zeller*, 361 Pa.Super. 35, 521 A.2d 459 (1987).

¶ 6 In *Askew*, our court comments that the liability for an accident as a result of signaling another motorist to make a left turn is a determination left to the jury. The signal might be considered simply an invitation to allow the turning driver to pass in front of the signaler or that it might be safe to pass all the way through the intersection. However, in *Askew*, this was not a central issue as the turning driver never testified that he relied upon the signal to make a complete turn. The effect of "negligent" signaling would not have affected the happening of the accident and was not an issue placed before the jury. Therefore, any comment regarding the determination of the effect of the signal is *dicta* and is not a definitive statement on that issue.

¶ 7 *Lewis v. Quinn*, 376 Pa. 109, 101 A.2d 382 (1954) found that a driver proceeding across an intersection with a green light still has a duty to look to make sure no one else is speeding through a red light. This case, as well as a litany of others, makes clear that even if a person has the right of way, that person can still be negligent if he or she does not keep the proper lookout. This makes it equally clear that Williams, in the present case, is properly charged with negligence. However, because *Lewis* was decided under the old contributory negligence standard and only determined that the plaintiff was at least 1% negligent, this case is not particularly helpful in determining appropriate degrees of negligence.

¶ 8 Perhaps the most helpful of prior cases is *Keating v. Belcher*, 384 Pa. 129, 119 A.2d 535 (1956). There a passenger on a motorcycle sued the operator of a car who allegedly signaled the motorcycle driver to pass him. The car driver denied that he ever waved his hand or signaled the motorcycle to pass. Our Supreme Court stated that the motorcycle driver's negligence was "so obvious and flagrant" that it well supported the finding for the defendant. The Supreme Court also stated, in *dicta* and citing to *Lewis*, that a hand signal would have been nothing more that an "invitation to pass when safe, and not a command to pass or an all clear signal." *Keating*, 119 A.2d at 537.

¶ 9 Although the facts in *Keating* involve a signal to pass, I see no reason to differentiate an attempted passing of another vehicle from the current factual pattern of an alleged invitation to make a left-turn. Both situations feature a driver yielding right of way to another where the other driver is personally unsure of what lies ahead.[5] In our case, this point is especial-

---

5. There appears to be difficulty in harmoniz-

ing *Keating* with *Askew*. *Askew* avoids direct

ly salient. Williams had no personal view of oncoming traffic and attempted to make a complete turn without personal knowledge of the ability to do so safely.

¶ 10 It is not only Pennsylvania that has had difficulty with "effect of signaling" cases. The case most similar to the one before us was decided by the Kansas Supreme Court. In *Dawson v. Griffin*, 249 Kan. 115, 816 P.2d 374 (1991), a phantom truck driver signaled another motorist to make a left-hand turn. The driver of the other car, Dawson, testified that the driver of the truck looked in the rear view mirror before signaling. After the accident, the phantom truck fled the scene. Dawson filed for uninsured motorist benefits. The Kansas Supreme Court stated:

In the case at bar, there was no verbal communication. In our view, any reliance on the alleged hand wave as a guaranty of safety, in the instant case, was unjustified as a matter of law. Perhaps the trucker meant one thing and Griffin assumed another. We will never know.

What we do know is this: Griffin had a nondelegable duty to yield to oncoming traffic while making a left hand turn; and the only reasonable and safe thing to assume from a hand wave is, "*I* won't hit you."

Other cases will present other facts and in a comparative negligence state, such as ours, each case will necessarily stand or fall on those unique facts. There may be a case where more can be safely

understood from a hand wave. This, however, is not such a case.

*Id.* at 379.

¶ 11 Like Kansas, Pennsylvania traffic laws recognize a nondelegable duty to yield the right of way when making a left-hand turn.

The driver of a vehicle intending to turn left within an intersection or into and alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard.

75 Pa.C.S. § 3321.[6] While the Kansas Supreme Court, in ruling on a factual scenario that is virtually the same as ours, determined that under the circumstances there could be no finding of liability on the waving driver, I believe that liability can be placed, in such a specific circumstance, on the waving driver. The ability to find negligence in this situation goes beyond all prior Pennsylvania case law. However, I also believe that the statutory requirement, placed upon the turning driver, places the majority of responsibility upon the turning driver. While the waving driver may be negligent (for example: in either failing to see the oncoming traffic or failing to see the car in a blind spot or some similar circumstance) it remains that it is the turning driver who has the primary statutory duty to maintain a proper lookout. There is no provision in the statute for allowing another person, in this case a total stranger, to completely assume

comparison with *Keating* by ignoring it. Ultimately, it must come down to the fact that this particular issue is dealt with in *dicta* in both cases. Therefore, we are not bound by either *Keating* or *Askew*, and a full analysis is warranted.

**6.** I note with some interest that under the Motor Vehicle Code of 1929, 75 P.S. § 572(b), the opposite was true: "The driver of a vehi-

cle, * * * approaching but not yet having entered an intersection, shall yield the right of way to a vehicle within such intersection or turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required in this act." *Virden v. Hosler*, 387 Pa. 1, 127 A.2d 110, 113 (1956).

that duty. Thus, as a matter of law, the signaling driver cannot be more negligent than the person who has actually relied on a yielding signal and made a blind left-hand turn.

¶ 12 I believe this view is further supported by a myriad of cases involving left-hand turns and intersectional collisions. There is a well known continuing duty to be on the look out even where a driver has the right of way. *See Heimburger v. Gundy*, 348 Pa. 114, 34 A.2d 489 (1943) (motorist with right of way cannot go into intersection blindly); *Webb v. Hess*, 335 Pa. 401, 6 A.2d 829 (1939) (even with right of way at intersection, motorist must continue to look); *Todd v. Talatta*, 200 Pa.Super. 342, 188 A.2d 807 (1963) (even if motorist has right of way, he cannot proceed heedlessly into intersection testing obvious danger); *Harper v. U.S. Government*, 406 F.Supp. 1141 (D.C.Pa.1976) (driver approaching intersection must exercise high degree of care entering intersection, notwithstanding traffic signal and light in his favor).[7] If the duty of care continues for even the motorist who ostensibly has the right of way, how much higher is the duty for those who are statutorily required to yield the right of way?

¶ 13 But there is no consensus throughout the country on this matter. Louisiana finds a possible breach of duty in signaling.[8] Missouri has held that whether a school bus driver failed to exercise the highest degree of care in signaling a student to cross the street was for a jury to decide. *See Miller v. Watkins*, 355 S.W.2d 1 (Mo.1962). Our factual scenario does not implicate the highest duty of care owed by a school bus driver to students. New York and West Virginia have also held the waving a pedestrian across the street may be negligent.[9] Michigan, where a 10 year old girl testified she would not have crossed the street but for the signal of an adult (which she took to be a direction) imposed liability on the signaling driver. *Sweet v. Ringwelski*, 362 Mich. 138, 106 N.W.2d 742 (1961).

¶ 14 However, Michigan later held that in ordinary circumstances a hand signal is nothing more than a yielding of right of way. *Peka v. Boose*, 172 Mich.App. 139, 431 N.W.2d 399 (1988). In *Peka*, one driver signaled another to make a left turn, and summary judgment was upheld in favor of the defendant.

¶ 15 In Illinois, a bus driver owed no duty in signaling a pedestrian across the street. *Diaz v. Krob*, 264 Ill.App.3d 97, 201 Ill.Dec. 799, 636 N.E.2d 1231 (1994). *Duval v. Mears*, 77 Ohio App.3d 270, 602 N.E.2d 265 (1991), imposed no duty on a motorist signaling to another motorist. Similarly, neither Virginia nor Washington imposes a duty on a signaling motorist.[10]

¶ 16 Facing a complete lack of consensus on this issue throughout the country, I believe there is simply too long a tradition in this Commonwealth of holding those who make a left-hand turn responsible for their actions for me to ignore. I believe that the majority's decision invites a situation which was abandoned by the legislature when it amended the traffic laws from

---

7. It is readily apparently that case law involving duty of care and right of way when turning or entering an intersection is long standing.

8. *See Massingale v. Sibley*, 449 So.2d 98 (La. App.1984); *Howard v. INA*, 162 So.2d 165 (La.App.1964).

9. *See Riley v. Board of Education*, 15 A.D.2d 303, 223 N.Y.S.2d 389 (3d Dept.1962); *Armstead v. Holbert*, 146 W.Va. 582, 122 S.E.2d 43 (1961).

10. *See Cofield v. Nuckles*, 239 Va. 186, 387 S.E.2d 493 (1990); *Alston v. Blythe*, 88 Wash. App. 26, 943 P.2d 692 (1997).

granting right of way to the signaling driver making the turn, to requiring that driver to yield the right of way. Certainly, a driver who signals to another should be cognizant of his or her action and may be held partially responsible for that action. However, the ultimate responsibility for safely negotiating a turn statutorily rests with the turning driver.

¶ 17 While obviously there are differences, when facts such as these are presented, I am reminded of the remonstration given by parents to their children from time eternal: "If he told you to jump off a bridge, would you do that, too?"

¶ 18 For the foregoing reasons, I must respectfully dissent.