Kaster, Appellant, *v.* Pennsylvania Fuel Supply Co.

Argued May 5, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Geo. F. Whitmer,* and with him *A. A. Geary,* for appellant.

*A. Leo Weil,* and with him *J. Smith Christy* of *Weil, Christy & Weil,* and *H. M. Rimer,* for appellee.

OPINION BY KELLER, J., July 8, 1931:

The plaintiff on March 18, 1924 entered into a written agreement with the defendant wherein she leased to it 202 acres of land, for five years from that date, for the sole purpose of mining and operating for oil and gas, under a royalty of one-eighth of all oil produced and saved, and $62.50 every three

months in advance for the gas from each and every well drilled on the premises, the product from which was marketed and used off the premises, as long as marketed and used.

The lease also made provision for a cash rental to be paid until certain wells were drilled on the premises and used. This was covered by two clauses in the lease, which must be construed together. The first was part of the printed lease, except for certain insertions in typewriting; the second was wholly typewritten. They are as follows, the italics representing the typewritten parts:

"Second party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portions of the farm. And further to complete a well on the said premises within *10 days* from the date hereof, or pay at the rate of *Sixty-three and 13-100 ($63.13) Dollars,* quarterly in advance, for each additional three months such completion is delayed from the time above-mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease."......

*"Said rental to begin from January 4, 1924. Five wells shall be drilled on the above tract and each well drilled shall release 40½ acres, when all land rental ceases. The land rental to be paid until well is used, when the royalty begins."*

The defendant drilled a well in 1928 which proved to be dry. It paid the full rental, or delay payments called for under the lease, up until January 4, 1929, receiving every quarter from the lessor a voucher "in full for delay in operation from

to                                    as provided in an oil and gas lease No. 757 made by Mary A. Kaster dated March 18, 1924"; and the checks contained the following endorsement signed by plaintiff; "Endorsement

below is receipt in full payment for land rental as shown on face of check."

At the expiration of the term the defendant surrendered the premises and the plaintiff brought this action claiming $16,510.52 damages for breach of contract, based on the alleged net cost of drilling four additional wells. The court below refused judgment for want of a sufficient affidavit of defense, which was affirmed by the Supreme Court. See 300 Pa. 52. On the trial the court directed a verdict for the plaintiff for the unpaid rental with interest, amounting to $55.57, and from the judgment entered on this verdict the plaintiff appealed.

Considering the lease as a whole and construing the two clauses above quoted in relation to each other, as we are required to do, for the second clearly refers back to the first, we are satisfied that the parties never contemplated or intended that if the lessee failed to drill some of the wells called for by the lease it should be required to pay the lessee the estimated cost of such wells as it did not drill. A reference to the first clause convinces us to the contrary. It contemplates the drilling of more than one well, for it provides for the location of 'all wells so as to interfere as little as possible with the cultivated portions of the farm'; and then comes the distinct covenant that the lessee shall 'complete a well on the said premises within ten days.' Standing by itself this is just as positive and mandatory as the provision in the second clause that 'five wells shall be drilled on the above tract'; but its immediate context makes it explicit that the only consequence resulting to the lessee from its failure to drill and complete the first well was the payment of $63.13 quarterly, in advance, for the period such completion was delayed; and if the second clause had not been added, the drilling of one well would have relieved the lessee of paying any money rental thereafter to the lessor

for the balance of the term, unless gas had been found in marketable quantity, when the royalty of $250 a year would have attached. Unmodified, the first clause gave the lessee the option of drilling a well or paying a quarterly rental of $63.13 until drilled, and as soon as one well was completed the rental, as distinguished from royalty, for the whole tract of 202 acres stopped. In our opinion the second clause was intended to modify this provision as respects the effect on the 'rental' following the drilling of a well, and change the number of wells which must be drilled before the rental stopped, but not to affect the lessee's option to pay the rental, if it saw fit to do so, instead of drilling the wells. It was evidently recognized that a tract of that size would warrant five wells, and it was felt to be unfair to relieve the entire tract of 'rental' by the completion of one well. Hence the provision for five wells instead of one and the corresponding stipulation that for each well drilled only 40½ acres, or one-fifth of the entire tract, should be relieved of 'rental,' and that 'rental' should be paid until 'royalty' began. By this clause it is provided that five wells must be drilled before the 'rental' entirely ceased,—one-fifth for each well,—and these must be producing wells to have that result.

The learned counsel for the appellant conceded on the oral argument that by the terms of the lease if the lessee failed to drill and complete any well at all, the utmost the lessor was entitled to receive from it by way of rental, compensation or otherwise, was $63.13 quarterly in advance for the entire term of five years; but insists that as soon as the first well was drilled and completed, even though it proved to be dry and unproductive, the lessor became entitled not only to the rental for the remaining four-fifths of the tract for the balance of the lease, but also to damages at the expiration of the term for the lessee's failure to drill the remaining four wells contemplated

in the contract, measured by the net estimated cost of completing such wells; and wholly irrespective of whether such wells would have produced anything by way of royalty to the lessor. Such a result following in the wake of the drilling of the first well, was not, in our opinion, intended or contracted for. We believe the construction placed by us on the second clause, in connection with and by way of modification of the first clause, is rather what the parties intended; that the alternative provided in the first clause for the lessee's failure to complete the first well attached to the modifying second clause, and fixed the 'rental' or compensation to be paid by lessee to lessor for delay in completing, or failure to drill, any of the wells, as was done in the leases in Wills v. Gas Co., 130 Pa. 222; Ray v. Gas Co., 138 Pa. 576; Springer v. Gas Co., 145 Pa. 430; Leatherman v. Oliver, 151 Pa. 646; Gibson v. Oliver, 158 Pa. 277; and that seems to have been the view of both parties to the contract during its life, as evidenced by the vouchers and receipts for rental above mentioned.

The cases relied on by appellant dealt with wholly different facts. In Knupp v. Bright, 186 Pa. 181, the only consideration given by the grantee of a five-eighths interest in an oil right or leasehold was his agreement to drill a well, of which the grantor of such interest was to pay one-eighth of the cost; and the grantee accepted a conveyance of said interest only twenty days before the contract was rendered null and void by his failure to drill the well called for. The agreement provided for no rental or compensation in case of failure to drill the well or other measure of damages for its breach.

In Iddings v. Gas Co., 8 Pa. Superior Ct. 244, 248, there was a lease which bound the lessee to complete a well within ninety days under a penalty of $90 a year until completion, and in case gas was found in sufficient quantities to justify marketing the same,

the lessee should pay $300 per annum as full consideration for the first well, and $200 for each and every other well. Two wells were drilled which produced gas in marketable quantities and thereafter the agreement was modified by providing that the lessee should drill a third well and pay $150 a year "at the same time and in the same manner" as provided in said lease for the payment of $300 and $200 for the first and second wells. The third well was not drilled and it was held that the lessee should pay the lessor, *not the cost of drilling the well,* but the sum fixed in the supplemental agreement; but in that case the two wells drilled by the lessee were producing gas in marketable quantities, and the lessee's only excuse for not complying with his supplemental agreement, was that the drilling of the third well would affect the flow of gas in the two wells already drilled.

In this view of the case it is not necessary for us to consider appellee's second position, that the cost of drilling the wells could in no event be the measure of damages for the defendant's failure to drill them, and that no other evidence of damage was produced.

The assignments of error are overruled and the judgment is affirmed.