**McConnell v. Guru Global Logistics, LLC**

C.P. of Lawrence County, Nos. 11225 of 2010, CA and 11354 of 2009, CA

*Jeffrey B. Killino* and *Anmar S. Wasfi*, for plaintiffs.

*Paul S. Guarnieri* and *John T. Pion*, for defendant Guru Global Logistics, LLC.

*Robert J. Grimm* and *Ryan M. Joyce*, for defendants Johnson, Singh and Howard Truckline, Inc.

MOTTO, *P.J.*, Aug. 7, 2014—Before the court for disposition is the motion for post trial relief filed on behalf defendant, Guru Global Logistics, LLC. These motions consist of a motion for judgment notwithstanding the verdict, motion for new trial, remittitur and motion to mold verdict, which raises the following issues:

I. Whether defendant is entitled to judgment notwithstanding the verdict because the opinions of plaintiffs' expert, Michael Napier, do not establish that Guru had control of defendant Andrew Johnson at the time of the accident, and that the evidence was otherwise insufficient to establish a claim based on negligent entrustment under the Restatement (Second) of Torts Section 308.

II. Whether plaintiff and co-defendants Andrew Johnson and Howard Truckline entered into a Mary Carter agreement without advising the court and opposing counsel of the same, thus entitling defendant to a new trial.

III. Whether the jury verdict was against the weight of the evidence.

IV. Whether the court erred in permitting evidence of defendant Andrew Johnson's prior convictions and traffic violations into evidence against Guru.

V. Whether the court erred by giving the jury an adverse inference instruction for Guru's failure to produce

records relevant to the case.

In addition to defendant's motion notwithstanding the verdict and motion for new trial, defendant also presented a motion for remittitur and a motion to mold verdict. More specifically, defendant claims the jury verdict is excessive and that there should be a reduction of damages due to plaintiff's first-party insurance benefits and plaintiff's settlement with defendant Andrew Johnson.

This post-trial motion was filed following a jury trial that ended on December 19, 2013, which resulted in the jury awarding $5,465,000 to plaintiffs, Vickie McConnell and Mark A. McConnell individually and as administrators of the estate of Mark A. McConnell, II, deceased.

Plaintiffs filed this action seeking recovery under the Pennsylvania wrongful Death and Survival statues following a motor vehicle collision that occurred on the morning of August 18, 2008, at the intersection of BFI Haul Road and West Main Street, Mahoning Township, Lawrence County. Plaintiffs' decedent was operating a 2005 Chevrolet Cobalt in an easterly direction on West Main Street when he was struck by defendant Andrew Johnson who was operating a 2003 Freightliner tractor-trailer in a northerly direction on BJU Haul Road. Plaintiffs' decedent died as a result of the collision.

Plaintiffs filed a complaint against defendant Andrew Johnson and defendant Chhinda Singh, d/b/a and a/k/a Howard Truckline and Howard Truckline, Inc. (hereinafter "Howard Truckline") alleging defendant Johnson negligently operated the tractor trailer he was driving and at the time of the accident Howard Truckline was vicariously liable because he was an agent, workman, employee/ or servant acting within the scope of him employment.

During the course of discovery, the plaintiffs learned that beginning in 2008 Howard Truckline began sharing Johnson as commercial motor vehicle operator with Guru Global Logistics, LLC. (hereinafter "Guru"). As a result of this deposition testimony and business records obtained, plaintiffs filed suit against Guru Global Logistics, LLC. The complaint alleges that defendant Johnson negligently operated the tractor trailer he was driving and that at the time of the accident Guru was vicariously liable because Guru was a joint employer of Johnson at the time of the accident and Johnson was acting within the scope of him employment. The complaint also alleges liability on a theory of negligent entrustment as to Howard Trucking and Guru. The cases against Guru and Howard Truckline were consolidated for trial.

Defendant Johnson testified that on the day of the accident during the early morning hours he delivered a load he had picked up the previous Friday. Although the load that he delivered that morning was undoubtedly from either Guru or Howard Truckline, he could not recall which one of the two carriers for which he made the delivery. After making this delivery in a tractor trailer owned by Howard Truckline, he called Guru and Howard Truckline for instructions on his next job. However, neither carrier had another haul for him at that moment. Guru instructed him to park until another load could be found for him to haul. Johnson, following Guru's instructions, proceeded to drive to an on-ramp to park and wait for orders from Guru for his next haul. The accident occurred on his way to the on-ramp.

Defendant filed a pre-trial motion in limine to preclude any evidence at trial of Johnson's prior motor vehicle violations and convictions. Defendants also moved for

a bifurcated trial between the negligence claim against Johnson and the negligent entrustment claims against Howard Truckline and Guru. On December 11, 2013, this court granted the motion to bifurcate and further ordered that plaintiffs were precluded from offering any evidence of Johnson's prior motor vehicle violations and convictions during the first phase of the trial on the issue of Johnson's negligence. However, if the jury found Johnson negligent, evidence of his prior motion vehicle violations and convictions would be admissible during the second phase of the trial, where the jury would determine whether Guru was liable for negligent entrustment.

Prior to commencement of trial on December 16, 2013, a settlement was reached between Plaintiffs and Johnson, Singh and Howard Truckline for $850,000.00. Plaintiffs agreed to settle and release all claims against Singh and Howard Trucklines and to indemnify and hold harmless Johnson for any and all cross-claims by Guru. Plaintiffs also agreed not to collect any claims against Johnson in excess of $850,000.00. Plaintiffs proceeded to trial against Johnson and Guru, on December 17, 2013, the jury returned a verdict in phase 1 of the bifurcated trial finding Johnson was negligent and that his negligence was a factual cause of the harm to plaintiffs' decedent. On December 19, 2013 the jury returned a verdict in phase 2 of the trial in favor of the plaintiffs and against Guru on the negligent entrustment claim. The jury awarded total damages in the amount of $5,465,000.00 with 2.1 million allocated for future loss of earning capacity, $365,000.00 for pain and suffering and 1.5 million for each of decedents' parents for loss of services, society and comfort. Guru thereafter filed this post-trial motion consisting of a motion for judgment notwithstanding the verdict or a new trial, or, in

the alternative a remittitur or molded verdict.

First, Guru argues that it is entitled to judgment notwithstanding the verdict because the opinions of plaintiffs' expert, Michael Napier, were without foundation and do not establish that Guru had control of defendant Andrew Johnson at the time of the accident; therefore, the expert testimony is insufficient to establish a claim based on negligent entrustment. Guru contends there was insufficient evidence to establish Guru's liability on a theory of negligent entrustment under Restatement (Second) of Torts section 308.

The established standard of review of judgment notwithstanding the verdict or judgment n.o.v. is whether competent evidence was presented to sustain the verdict. *Northeast Fence & Iron works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 668 (Pa. Super. 2007)(citing *Brown v. Progressive Insurance Co.*, 860 A.2d 493, 497 (Pa. Super. 2004)). Judgment n.o.v. should only be entered in clear cases where no reasonable minds could disagree that the moving party is entitled to relief. *Id.* The evidence must be viewed in a light most favorable to the verdict winner and giving him or her the benefit of every reasonable inference arising from those facts and while rejecting all unfavorable testimony and inferences. *Id.* Judgment n.o.v. can only be entered upon two grounds: (1) where the movant it entitled to judgment as a matter of law; or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. *Griffin v. Univ. of Pittsburgh Medical Center-Braddock Hosp.*, 950 A.2d 996, 999 (Pa. Super. 2008); *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. 2006). The verdict must be affirmed if any basis exists upon which the jury could have properly made its award. The entry

of judgment n.o.v. is a drastic remedy and a court cannot lightly ignore the findings of a duly selected jury. *Atwell v. Beckwith Machinery Co.*, 872 A.2d 1216 (Pa. Super. 2005)(quoting *Education Resources Institute, Inc. v. Cole*, 827 A.2d 493, 497 (Pa. Super. 2003)).

In the instant case, at the close of plaintiff's case Guru moved for a directed verdict on the sole claim of negligent entrustment arguing that plaintiffs failed to establish that Guru was liable under the Restatement (Second) of Torts Section 308. Section 308 of the Restatement (Second) of Torts defines the tort of negligent entrustment as follows:

§308 Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts §308; *Christiansen v. Silfies*, 667 A.2d 396, 400 (Pa. Super. 1995), *app denied*, 686 A.2d 1307 (Pa. 1996).

Under a theory of negligent entrustment, liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his or her control. *Id.* Section 308 imposes liability on a defendant because of his or her own acts in relation to an instrumentality or activity under his or her control; an entrustor's liability is not dependant on, derivative of, or imputed from the entrustee's actual liability for damages. *Id.*

Plaintiffs argue that under Pennsylvania law, Guru needed only to control the activity, in this case commercial trucking, to be liable under §308. In other words, Guru is negligent by permitting a third person, Johnson, to engage in commercial trucking, which was under Guru's control, where Guru knew or should have known that Johnson was likely to conduct himself in the activity of commercial trucking in such a manner that created an unreasonable risk of harm to others. Plaintiffs contend that they presented overwhelming undisputed evidence establishing Guru's liability under the plain language of Section 308.

At trial, plaintiffs presented the testimony of defendant Andrew Johnson and commercial trucking industry expert Michael Napier to support their claim that Johnson was under the control of Guru at the time of the accident. Napier's credentials, which include decades of field experience as a tractor trailer driver along with years of ownership/management positions focused on commercial trucking safety and relegation complaints qualified him as having the specialized knowledge to give opinions to a reasonable degree of professional certainty about whether or not defendant Andrew Johnson was under Guru's control as defined by industry practice and the federal regulations at the time of the crash. Through Napier's expert testimony, plaintiffs presented evidence that Johnson was engaged as a commercial truck driver under Guru's control at the time of the crash, as defined by industry practice and federal regulations. Napier testified that in his opinion Guru was in control of Johnson at the time of the accident because (1) Guru dispatched Johnson by telling him to go park and he would obtain a load for him immediately prior to the accident; (2) the prior practice of Guru and Howard Truckline demonstrated joint control based on Johnson

routinely driving for each entity, with the only evidence as to which company Johnson was actually hauling a load for being recorded in the drivers' log, which was missing for the date of the accident; and (3) Guru's owner took Johnson for his mandatory drug test after the accident. Based on these factors, Napier testified that Guru had control over Johnson when the accident occurred and that Guru should not have permitted Johnson on road driving a commercial truck.

Plaintiffs contend they presented undisputed evidence establishing Guru's liability under the plain language of Section 308. Specifically, Napier testified that a commercial truck driver cannot operate a truck and haul loads unless he is authorized by a motor carrier; therefore, Johnson could not engage in commercial trucking at the time of the crash, unless Guru authorized and dispatched Johnson to do so. Thus, not only did Guru control the activity of commercial trucking, but Guru also controlled Johnson and the operation of the truck because Johnson would use the truck to make hauls for Guru. There was evidence presented that this was a common business practice.

According to plaintiff's expert witness, although there was no log for the day of the crash, based on the undisputed evidence, Guru was Johnson's controlling motor carrier under the federal regulation and standard industry practices when the crash occurred, by virtue of Guru's actions in: dispatching Johnson; instructing Johnson to wait on a load; picking up Johnson from the crash scene for transport to a regulatory required post-crash drug and alcohol test at the center Guru routinely uses for its drivers; and all of the information available about the patterns and practices, transactions, communications and relationships involving Guru, Howard Truckline and Johnson. Thus, plaintiffs

proved that Guru was negligent pursuant to the plain language of Section 308. Plaintiffs presented evidence that Guru was negligent by permitting Johnson to engage in commercial trucking, which was under Guru's control, where Guru knew or should have known that Johnson was likely to conduct himself in the activity of commercial trucking in such a manner that created an unreasonable risk of harm to others. *See Christiansen v. Silfies*, 667 A.2d 396 at 400; Restatement (Second) of Torts §308. Plaintiffs contend that the jury properly weighted this overwhelming and undisputed evidence, and rendered a reasonable, logical verdict, finding Guru's negligence to be a cause of Mark McConnell II's death.

In its post-trial motion for judgment n.o.v. Guru cites cases *Johnson v. Johnson*, 410 Pa. Super. 631, 600 A.2d 965 (1991) and *Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. 2009), which utilize a two part test found in Comment (a) of the Restatement (Second) of Torts §308, to argue that defendant is not liable under a theory of negligent entrustment because there is generally no duty to control the acts of a third party unless the defendant stands in a special relationship with the third party or the plaintiff. Guru contends that the central issue in this case is whether plaintiffs produced sufficient evidence to support a jury verdict that Guru employed Johnson, was in control over the truck being driven by Johnson, and had actual control over Johnson at the time of the accident. Guru contends that plaintiffs negligent entrustment claim does not depend on whether Guru obeyed the Federal Motor Carrier Safety Regulations (FMSCR), as indicated by plaintiffs expert, but instead on whether plaintiffs produced sufficient facts to establish control as defined in Comment (a) of the Restatement (Second) of Torts §308. According

to Guru, the question is whether plaintiffs produced facts to establish that Johnson was entitled to possess or use the Howard Truckline truck or engage in the activity of driving the truck only by the consent of Guru and that Guru had reason to believe that by withholding consent, it could prevent Johnson from using the truck or engaging in the activity of driving the truck, *see* Restatement (Second) of Torts §308, Comment (a). If Plaintiffs cannot meet their burden of producing facts of record to establish both of these requirements, then Guru is entitled to judgment n.o.v.

In *Johnson v. Johnson, supra.*, the action arose after a hunting accident involving members of the two separate hunting clubs. Members of both clubs, including the decedent, formed a group and engaged in a technique known as a drive. The purpose of the drive was to herd deer toward the watchers, who were members of the club who would be posted at the likely flight path of the running deer. The drivers would walk regimentally toward the watchers, a drill which would encourage deer to depart in the direction of the watchers. Lyon Johnson, minor son of defendant Edward Johnson and nephew of the decedent, also attended and was selected to be driver. In the process of conducting the drive, the minor, Lyon Johnson fired two shots. One of these shots fatally wounded the decedent while both were attempting to drive the deer. *Id.* at 632, 600 A.2d at 966.

In finding that the other gun club members did not incur liability, the *Johnson* Court reasoned that the Comments to §308 enunciate a two-part test to apply in determining whether the third person is under the control of the actor:

The words "under the control of the actor" are used to indicate that the third person is entitled to possess

or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

*Id.* at 637, 600 A.2d at 970-71, quoting Restatement (Second) of Torts §308 (1965), Comment (a).

In applying this two-part test, the *Johnson* Court upheld the trial court's ruling that the minor shooter's father was the only club member who could have exerted the requisite level of control to satisfy §308. Plaintiffs cited to testimony of Richard Johnson, who was one of the adult members of the club, stated that earlier in the day he considered taking the minor's gun because he was acting erratically. *Id.* at 638, 600 A.2d at 971. Plaintiff argued that this was evidence that Richard Johnson had control over the minor pursuant to Section 308. In rejecting this argument, the Superior Court explained that the proffered statement merely indicates that Richard Johnson had reason to believe that he could prevent Lyon Johnson from hunting. *Id.* The court concluded that plaintiff could not establish a claim that Richard Johnson controlled the minor because the record is devoid of any indication that Richard Johnson was in control of Lyon Johnson's gun as contemplated by §308 of the Restatement. Thus, under the terms of §308 neither Richard Johnson nor any other member of the hunting club was in the position of sole arbiter of whether Lyon Johnson was permitted to engage in hunting activities or possess a gun for that purpose. The record is devoid of any indication that Richard Johnson was in control of Lyon Johnson's gun as contemplated by §308 of the Restatement. Thus, the court reasoned neither Richard Johnson not any other member of the hunting

club could control whether Lyon Johnson was permitted to engage in hunting activities or possess a gun for purposes of hunting. *Id.*

Similarly, in *Wittrien v. Burkholder, supra*, the Superior Court was asked to determine whether there was evidence of control pursuant to section 308 to hold the defendant liable for the actions of a third party when the defendant did not own the instrumentality at issue. In *Wittrien*, the plaintiff brought a §308 Restatement (Second) of Torts claim against the parents of an adult man who shot him, alleging that the parents allowed their son access to the gun used in the shooting. The shooter in this case was a adult living in his parents' home, who legally purchased the gun he used in the shooting when he was an adult and was the gun's rightful owner. At one point prior to the day of the shooting, the father had taken the gun away from his son and hid and locked it away due to the son threatening suicide. *Id.* There was also evidence that the parents knew their son had violent propensities and had a history of violence. *Id.* at 1231. In fact, the father admitted he had feared for his own safety and believed his son should not have a gun. However, several months prior to the shooting, the father eventually told him son where the gun was located and his son so his son could retrieve his gun. *Id.*

After the plaintiff was shot, he sued the shooter's parents under §308 claiming that they were negligent in allowing their son access to the gun. *Id.* at 1232. The defendant filed a motion for summary judgment, which the trial court granted. On appeal, the Superior Court affirmed the trial court's decision and found that the record was devoid of any evidence to support that the defendant's parents had the right to control the gun on the date of the shooting. *Id.* at 1233. The court stated that in order to prove that the

third person was under the control of the defendant under Comment (a) to §308, the plaintiff must establish that the third person was entitled to use the instrument or engage in the activity only by the control of the defendant. The court reaffirmed that the defendant must have reason to believe that by withholding his consent, he could prevent the third person from using the thing or engaging in the activity, *Id.* Both parts of the test must be met in order to prove under the control pursuant to §308.

Applying the two-part test to the facts of the case, the Superior Court rejected the plaintiff's argument that because the defendant had previously taken possession of the gun that this was evidence the shooter had the right to use the gun only by the consent of the defendants. The court found that the parents did not have the right to control the gun on the date of the shooting and the temporary confiscation of the gun in an emergency situation failed to support a conclusion that their son had the right use the gun only by their consent. *Id.* Thus, plaintiff failed show that defendant exhibited the requisite control pursuant to Section 308.

In the instant case, Guru argues that in applying the two-part test and rationale in the *Johnson* and *Wittrien* cases to the facts in this case, that the plaintiffs did not meet their burden to prove Johnson was entitled to possess or use the Howard Truckline trucks only by the consent of Guru and that Guru had reason to believe that by withholding consent it could prevent Johnson from using or driving the truck. Guru contends that based on the above cited cases and Comment (a) to §308 that regardless of Guru's actions prior to the date of the accident and regardless of whether those prior actions were wrong, Johnson was not under the control of Guru at the time of the accident. Thus,

as a matter of law, plaintiffs failed to establish a claim for negligent entrustment and Guru is entitled to judgment n.o.v.

The court finds that Plaintiffs presented overwhelming evidence at trial that Guru was negligent by permitting Johnson to engage in commercial trucking, which was under Guru's control, where Guru knew or should have known that Johnson was likely to conduct himself in the activity of commercial trucking in such a manner that created an unreasonable risk of harm to others. The undisputed facts from the trial show that on Monday, August 18, 2008, Johnson got into his tractor trailer owned by Howard Truckline and drove to the BFI dump where he dropped off the load he was transporting for Howard Truckline. After dropping off the load, and while leaving the BFI facility, Johnson first called the owner of Howard Truckline who indicated he did not have a load for him and told Johnson to call Guru to see if they had a load for him. Johnson testified that Guru's owner advised him to go wait and he would find something for him and told Johnson to go sit on the off ramp and he would find something for him. Plaintiffs presented two witnesses, Johnson and plaintiff's expert Michael Napier to support their claim that Johnson was under the control of Guru at the time of the accident. In their motion for judgment n.o.v. Guru cites Comment (a) to §308 of the Restatement (Second) of Torts to argue for a more technical definition of control under a negligent entrustment claim. However, plaintiffs have provided overwhelming undisputed evidence to satisfy control under both the plain language of §308 and comment (a) cited to by Guru.

The *Johnson* and *Wittrien* cases cited by Guru carry many factual distinctions with this case as both of those

cases involve the responsibility to control the safe use of guns, rather that the heavily federally regulated commercial trucking industry. As a commercial truck driver, Andrew Johnson was controlled as a commercial motor carrier according to federal regulations. No such analogous regulations exist for adults and guns, In applying the two-part test in Comment (a) to §308 in *Johnson*, the *Johnson* court upheld the trial court's ruling that the minor shooter's father was the only club member who could have exerted the requisite level of control to satisfy §308. In doing so, the *Johnson* Court reasoned that the other members lacked the level of authority and relationship to the minor shooter to control whether the minor shooter was permitted to engage in hunting activities or possess a gun for purposes of hunting. *Id.* 410 Pa. Super. at 637, 600 A.2d at 971. Here, unlike the club members in *Johnson*, Guru had the requisite level of control to satisfy §308 according to the two part test. As to the first part of the test, the undisputed evidence presented by the testimony of plaintiff's expert Michael Napier proved that Johnson could only engage in commercial trucking by the consent of Guru. Specifically, Napier testified that a commercial truck driver cannot engage in commercial trucking unless he is authorized by a motor carrier, and Johnson was engaging in commercial trucking under Guru's consent at the time of the crash. In satisfying the second prong, plaintiffs presented undisputed testimony that Guru had reason to believe that by withholding consent, Guru could have prevented Johnson from engaging in commercial trucking. Plaintiff's expert unequivocally testified that if Guru had taken Johnson off the road the crash that killed the decedent would not have occurred. Guru failed to present any countering expert testimony as evidence or cross-examine Napier regarding his testimony. Accordingly, the jury reasonably and logically relied on the

undisputed evidence that if Guru had properly complied with the federal regulations and taken Johnson off the road, as Johnson was unfit to drive the truck based on his driving history and prior record, then the crash that killed the decedent would not have occurred, In satisfying both parts of the *Johnson* test, plaintiffs presented undisputed evidence that Andrew Johnson was engaged in commercial trucking by Guru's consent at the time of the crash and Guru had reason to believe that by withholding consent it could have prevented Andrew Johnson from engaging in commercial trucking at the time of the crash. The facts of this case are distinctly different from the *Johnson* case citied by Guru where other members of the club lacked the level of authority to control whether the minor shooter was permitted to engage in hunting activities or posses a gun.

Similarly, the *Wittrien* case cited by Guru presents a defendant that did not have the right to control the instrument or activity involved, which is required under a negligence entrustment action under §308. The *Wittrien* Court found that plaintiff's failure to establish that defendant had the right to control the firearm that was in the possession of their adult son was fatal to their claim for negligent entrustment under §308. Here, the plaintiff's presented undisputed evidence that Johnson could not engage in commercial trucking at the time of the crash without Guru's consent. Plaintiffs presented undisputed evidence that Guru was Johnson's controlling motor carrier under the federal regulations and standard industry practices when the crash occurred by virtue of Guru's actions in dispatching Johnson; instructing Johnson to wait on a load; picking up Johnson from the crash scene for transport to a regulatory required post-crash drug and alcohol test at the center that Guru routinely uses for its

drivers; and all of the information available about the patterns and the practices, transaction, communications and relationships involving Guru, Howard Truckline and Johnson. While Guru argues that to be held liable on a claim of negligent entrustment under §308 the plaintiff needs to prove they were in exclusive control of the driver, this interpretation does not stand under the plain language of §308. In *Christiansen v. Silfies, supra.*, the Pennsylvania Superior Court found that Section 308 imposes liability on a defendant because of his own acts in reaction to an instrumentality or activity under his control; an entrustor's liability is not dependant on, derivative of, or imputed from the entrustee's actual liability for damages. *Id.* 667 A.2d 396 at 400; Restatement (Second) of Torts §303. Nowhere is it required that Guru's control be exclusive, or that Guru's liability be mitigated by Howard Truckline's shared control over the commercial truck or Johnson.

Here, plaintiffs have established facts and inferences which prove their negligent entrustment claim pursuant to Section 308 of the Restatement (Second) of Torts against Guru. Plaintiffs presented sufficient evidence at trial for a jury to conclude that Guru was negligent by permitting Johnson to engage in commercial trucking, under Guru's control, where Guru knew or should have known that Johnson was likely to conduct himself in the activity of commercial trucking in such a manner that created an unreasonable risk of harm to others. Guru had an opportunity to present evidence at trial to dispute the plaintiff's evidence proving that Guru was a controlling motor carrier at the time of the crash under §308 and Guru failed to provide such evidence. Therefore, it would be improper for this court to ignore the jury's verdict and make its own determination of the facts in entering

judgment notwithstanding the verdict in favor of Guru. Thus, Guru's motion for judgment notwithstanding the verdict is denied.

Next, Guru contends that plaintiffs and defendant Andrew Johnson entered into a Mary Carter agreement without advising the court or opposing counsel thereby entitling Guru to a new trial.

The legal requirement for the grant of a new trial based upon after-discovered evidence are well established: the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result. *Daniel v. Wyeth Pharmaceuticals. Inc.*, 15 A.3d 909, 916 (Pa. Super. 2011).

In their motion for a new trial, Guru argues that after the completion of the trial evidence was discovered which supports that unbeknownst to Guru prior to trial plaintiffs and defendant Andrew Johnson entered into a Mary Carter agreement.[1] A Mary Carter agreement, or a variation of this type of agreement, is admissible at trial against the settling party so that the jury is aware of that party's bias, which would otherwise by unclear from the circumstances. *Hatfield v. Continental Imports*, 530 Pa. 551, 556, 610 A.2d 446, 451-52 (1992); *Great American Insurance Co. v. Norwin School Dist.*, 2006 U.S. Dist. LEXIS 37661, at *6 (W.D. Pa. 2006)(explaining that the Pennsylvania Supreme Court, unlike some other jurisdictions, has not held that Mary Carter agreements are void against public

---

1. The term "Mary Carter agreement" came from the case *Booth v. Mary Carter Paint Co*, 202 So.2d 8 (Fla.Dist.Ct. App. 1967), overruled on other grounds in *Ward v. Ochoa*, 284 So.2d 385, 387 (Fla. 1973).

policy, but only that their existence should be disclosed to the jury at trial to allow the trier of fact to take into consideration the possible bias of the agreeing defendant insofar as that party testifies in a manner adverse to the non-agreeing defendant.) What constitutes a Mary Carter agreement is not always clear. A Mary Carter agreement may have some, or all of the following features:

(1) the agreeing defendants guarantee the plaintiff a minimum payment, often the limit of defendant's liability insurance;

(2) the plaintiff agrees not to enforce against the agreeing defendants any subsequent judgments;

(3) the agreeing defendants remain a part of the action and payments to plaintiff are reduced if money is recovered, by settlement or judgment, from the non-agreeing defendants; and

(4) the agreement is secret in that there is an understanding that it will not be disclosed unless required by the rules of court or a court of competent jurisdiction.

*Hatfield v. Continental Imports*, 530 Pa. at 556, 610 A.2d at 449.

While such an agreement may have some or all of the above reference elements, there are many variations of this type of agreement. *Id.* as such, the Pennsylvania Supreme Court has found that whether an agreement is characterized as a Mary Carter agreement is irrelevant. *Id.*

Instead, the typical Mary Carter agreements arise when, in a settling of multiple defendants, one or more, but less than all of the defendants reach an agreement with the

plaintiff, but wish to retain some interest in the outcome of the litigation. *Id.* 530 Pa. at 555, 610 A.2d at 448. Such an agreement implicitly joins nominal adversaries in an alliance against the remaining defendant. This has the effect of distorting the adversarial process assumed by the trier of fact to exist. *Id.* 530 Pa. at 559, 610 A.2d at 452. In other words:

> Such agreements carry substantial potential for distortion of the truth determination process because the settling defendant has an incentive to minimize its liability not by disputing its own responsibility, but by joining with the plaintiff to enhance the responsibility of the non-settling defendant. Because the jury is unaware of the potential for biased testimony created by such an arrangement, the potential for a miscalculation of actual responsibility is great.

The new wigmore: A treatise on evidence selected Rules of Limited Admissibility, §3.7, pp. 29-30, Aspen Publishers Inc. (2014)(internal citations omitted).

In the instant case, Guru contends that evidence was discovered following the trial which strongly supports that plaintiffs and Andrew Johnson entered into a Mary Carter agreement, which was not disclosed to the court or Guru so that Guru could request that the jury be advised that Johnson was a biased defendant at trial. Guru argues that it was not evident until after trial that Johnson actually assisted plaintiffs with their case against him so that the jury would find him liable. Guru claims that Johnson's absolute failure to defend himself at trial *without the jury* being apprised that Johnson was making a choice not to defend himself distorted the fact-finding process and Guru is entitled to a new trial. Guru contends that Johnson's

agreement not to defend himself was prejudicial to Guru as it could only be found liable for negligent entrustment if Johnson was first found negligent. Prior to trial, Johnson denied being negligent and claimed he did not run the stop sign and cause the accident. In support of Johnson's defense that he stopped at the stop sign and did not disregard the flashing red light, Johnson also retained an accident reconstruction expert who performed a detailed reconstruction of the accident. At trial, Johnson did not call his accident reconstructionist to challenge the opinions of plaintiff's expert, nor did he call an independent witness to testify that she saw Johnson stop at the stop sign. Furthermore, per the agreement, plaintiffs were guaranteed a minimum payment of $850,000.00 which was almost the entire insurance policy for Johnson and Howard Truckline. Moreover, plaintiffs agreed not to collect the remaining portion of the insurance policy, which was $150,000.00, for any judgment against Johnson and agreed not to enforce any judgment against Johnson and to enter satisfaction of the judgment against him.

Guru contends that Johnson made a deliberate decision not to defend himself at trial as a settlement agreement, which was not disclosed to the court or counsel for Guru, and this factor, along with the settlement documents and representations made regarding settlement, strongly support that plaintiffs and Johnson entered into a Mary Carter agreement, while such agreements are not void under Pennsylvania law, the fact that there was such an agreement must be clearly stated and its existence conveyed to the jury. If Guru had known Johnson intended to proceed at trial with not defending himself, which would impact whether there would be a second phase of trial to determine if Guru was liable for negligent entrustment,

Guru's counsel could have made appropriate strategic decisions to address this at trial. The discovery of this following trial warrants that a new trial be granted.

The court finds that the settlement agreement reached prior to trial between plaintiffs and Andrew Johnson does not constitute a Mary Carter agreement and Guru was not prejudiced by Johnson's alleged failure to defend himself at trial. Guru was aware of the agreement between plaintiffs and Johnson as the terms of the agreement were stated on the record with all parties present prior to the start of trial. It was apparent from what was put on the record that as a result of this agreement between plaintiffs and Johnson that Johnson was no longer at risk financially for any verdict. Guru stated that they made a strategic decision to distance themselves from Johnson during the trial and not put forth a defense on behalf of Johnson. During the trial, Guru made the decision not to provide a defense to defendant Johnson when they were aware that his risk of liability was eliminated and he had no incentive to put forth his own defense. Guru made a strategic decision not to provide Johnson with a defense at trial and chose not to call Johnson as Guru's witness in the first part of the case to address his negligence. Guru also did not have an expert accident reconstructionist, as they did not contribute to the cost of the expert Johnson had acquired and they chose not to call the witness who stated that Johnson did in fact stop at the intersection prior to the accident. Guru was aware of the settlement that Johnson had made with plaintiffs prior to trial and chose to proceed on the same theory that Johnson was not employed by Guru at the time of the accident. The fact that Johnson chose not to call his expert at trial because he was shielded from further liability does not automatically make the settlement a Mary Carter

agreement. Under *Hatfield v. Continental Imports, supra.,* a common element in Mary Carter agreements is that the agreeing defendant remains a part of the action and payments to plaintiff are reduced if money is recovered by settlement or judgment from the non-agreeing defendants. Here, Johnson had no financial interest in the outcome of the case because in the agreement he was indemnified of all liability beyond the settlement amount. A Mary Carter agreement goes to the bias of the case. If a party has an interest in the outcome of the case then the agreement is admissible as evidence of that bias to the jury. Because Johnson had no financial interest in the outcome of this case the settlement agreement was not admissible as to evidence of a bias to the jury.

Additionally, the fourth element of a Mary Carter agreement is secrecy. In this case, there was no secrecy surrounding the agreement before the trial began. All parities were aware of the settlement agreement and its' terms. Guru knew that Johnson would have no reason to incur the cost of an expert because he was shielded from further liability and Guru made the conscious decision not to defend Johnson and instead distance themselves from him by asserting that he was not working for Guru at the time of the accident. There is no evidence that a Mary carter agreement existed between Plaintiffs and Johnson and Guru was fully aware of the terms of the agreement prior to trial and adjusted its' trial strategy accordingly. Therefore, Guru's motion for a new trial because of an undisclosed Mary Carter agreement is denied.

Next, Guru moves for a new trial because the jury's verdict finding Guru negligent is against the weight of the evidence. Guru's motion for a new trial related to the weight of the evidence presets issues similar to the legal

and factual issues presented in its' motion for judgment notwithstanding the verdict. More specifically, Guru contends because there was no evidence produced during trial to support that Johnson could only drive the Howard Truckline truck with the consent of Guru, and that Guru had reason to believe by withholding consent it could prevent Johnson from driving, the jury's verdict finding negligent entrustment, was against the weight of the evidence.

The power to decide if the jury's verdict is against the weight of the evidence is within the discretion of the trial court. *Armbruster v. Horowitz*, 572 Pa. 1, 9, 813 A.2d 698, 703 (2002)(citations omitted). It is well known that the jury's role in the litigation process is to determine questions of credibility and evidentiary weight; therefore, a new trial is warranted when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Criswell v. King*, 575 Pa. 34, 46, 834 A.2d 505, 512 (2003)(quoting *Armbruster*, 572 Pa. 1, 813 A.2d 698, 703 (2002)). A new trial should not be granted based on a mere conflict of testimony or because the trial judge would have arrived at a different conclusion. *Armbruster*, 572 Pa. at 9, 813 A.2d at 703 (citations omitted). If there is conflicting evidence and the jury's findings are supported by the record the trial court's denial of a motion for a new trial will not be disturbed. *Commonwealth v. Purcell*, 103 Pa. Super. 342, 349, 589 A.2d 217, 221 (1991)(quoting *Commonwealth v. Larew*, 289 Pa. Super. 34, 37, 432 A.2d 1037, 1038 (1981)).

In the instant case, plaintiffs presented undisputed evidence establishing Guru's liability under the plain language of section 308 of the Restatement (Second) of Torts. Specifically, a commercial truck driver cannot

operate a truck and haul loads unless he is authorized by a motor carrier. According to Napier, a expert in commercial trucking standards, Johnson could not engage in commercial trucking at the time of the crash, unless Guru authorized and dispatched Johnson to do so. Thus, Plaintiffs presented evidence that not only did Guru control the activity of commercial trucking, which is the only control required of Guru under §308, but Guru also correspondingly controlled Johnson and the operation of the truck, because Johnson would use the truck to make hauls for Guru. There was undisputed evidence that this was a common business practice. According to the testimony, when there was a Guru load to haul in a Howard Truckline truck Johnson would record Guru is his log and when it was a load for Howard Truckline Johnson would record Howard Truckline in his log. Although there was no log for the day of the crash., based on the undisputed evidence presented by plaintiff's expert, Guru was Johnson's controlling motor carrier under the federal regulation and standard industry practices when the crash occurred by virtue of Guru's actions in: dispatching Johnson; instructing Johnson to wait on a load; picking up Johnson from the crash scene for transport to a regulatory request post crash drug and alcohol test at the center that Guru routinely uses for its drivers; and all of the information available about the patterns and the practices, transactions, communications and relationships involving Guru, Howard Truckline and Johnson.

Thus, plaintiffs proved their negligence claim pursuant to the plain language of §308 against Guru. Plaintiffs presented overwhelming undisputed evidence at trial that Guru was negligent by permitting Johnson to engage in commercial trucking, which was under Guru's control,

where Guru knew or should have known that Johnson was likely to conduct himself in the activity of commercial trucking in such a manner that created an unreasonable risk of harm to others. *See Christiansen v. Silfies, Supra.* 667 A.2d 396 at 400, citing Restatement (Second) of Torts §308. The jury properly weighed this undisputed evidence and rendered a reasonable, logical verdict finding Guru's negligence to be a cause of Mark McConnell, II's death.

The evidence at trial clearly shows that Guru was a controlling motor carrier, even when viewing the evidence in the light most favorable to Guru. Specifically, Guru quotes Johnson's testimony that Johnson could have rejected a request for a load from Guru. However, this evidence is not sufficient to establish that the jury's verdict was against the weight of the evidence as plaintiff provided compelling evidence to the contrary. Guru had an opportunity to present evidence at trial to dispute plaintiff's evidence proving Guru was a controlling motor carrier at the time of the crash under Restatement (Second) of Torts Section 308 and Guru failed to provide any such evidence. The jury's verdict against Guru, after properly weighing all of the undisputed evidence against Guru is certainly not such an extraordinary circumstance where the verdict was so contrary to the evidence that it shocked one's sense of justice. Therefore, the jury's verdict will not be disturbed.

Next, Guru argues that the court erred in permitting evidence of Johnson's prior convictions and traffic violations into evidence at trial against Guru.

Prior to trial, defendants filed motions in limine to preclude plaintiffs from offering any evidence or testimony at trial as to Johnson's prior convictions and traffic

violations. Guru contends that while the court bifurcated the trial so that such evidence was inadmissible during the first phase of the trial which involved the issue of whether Johnson was negligent, the court improperly allowed this evidence during the second phase of trial as to the issue of whether Guru was negligent. Guru contends this was an abuse of the court's discretion and error of law that entitles Guru to a new trial.

A court should grant a new trial when it determines that the judicial process has resulted in a serious injustice, as where there has been an error of law or an abuse of discretion which controlled the outcome of the case. *Andrews v. Jackson*, 800 A.2d 959, 962 (Pa. Super. 2001), *app. denied*, 813 A.2d 835 (Pa. 2002). If a prejudicial error or abuse of discretion has occurred, a new trial should be granted. *Harman v. Borah*, 756 A.2d 1116 (Pa. 2000).

Pennsylvania courts have decisively held that a trial court's bifurcation to avoid prejudice in similar cases where a commercial truck driver's prior record is introduced into evidence as part of a negligent entrustment claim is proper and not an error of law. In *Christiansen v. Silfies*, *supra*, the Pennsylvania superior Court ruled on this same issued under similar circumstances. The *Christiansen* case involved a fatal motor vehicle crash in which the decedents' automobile collided with a tractor-trailer being operated by defendant Richard Silfies. The tractor-trailer was owned by Harold Silfies, which, at the time of the crash, was leased to appellee Carl Betz. Richard Silfies was employed by Carl Betz. The plaintiff brought claims of negligence against the defendants, claiming Richard Silfies was negligent in operating the tractor trailer and that Harold Silfies and Carl Betz were liable on a theory of negligence entrustment of the tractor-trailer to driver

Richard Silfies. In support of the negligent entrustment claim, the plaintiff presented evidence of Richard silfies' poor driving record. *Id.* 667 A.2d 396 at 398.

In addressing the propriety of the trial court's bifurcation of the liability phase of the trial, the *Christiansen* Court clearly held that bifurcation under the circumstances is appropriate to avoid undue prejudice where evidence of a commercial driver's prior record will be presented as part of a negligent entrustment claim. The Superior Court found that bifurcating the liability phase so that the jury would hear the case against Richard Silfies independent from that against Harold Silfies and Carl Betz due to the prejudicial nature of the negligent entrustment evidence was a proper exercise of discretion by the trial court. *Id.* at 399.

In the case sub judice, the court bifurcated the negligence case against Johnson from the negligent entrustment claim against Guru so that the jury would hear the case against Johnson independently from that against Guru due to the prejudicial nature of the negligent entrustment evidence. This was a proper exercise of discretion by the court and avoided any prejudice to Johnson. Additionally, the court properly followed the guidelines set forth in *Christiansen* as the jury here was given an appropriate instruction that they were not to consider the poor record of Johnson with regard to the apportionment of negligence to him, so as to avoid undue prejudice.

Moreover, under Section 308 of the Restatement (Second) of Torts plaintiffs had to present evidence that Guru knew or should have known Johnson, while engaging in commercial trucking, would conduct himself in such a manner as to create an unreasonable risk of harm to

others. Under the federal commercial trucking regulations Guru had an obligation to closely examine Johnson's prior record before allowing Johnson on the road. One of the purposes of the federal trucking regulations requiring a motor carrier such as Guru to examine the competence, fitness and background of a driver is to prevent crashes. According to plaintiff's expert, Johnson was a driver with numerous driving violations including failures to obey traffic control devices and speeding prior to the day of the crash and Johnson's record as to public drunkenness relates to his fitness and background. Thus, under federal regulations Guru was required to know Johnson's past driving history and the record as to public drunkenness prior to allowing him to operate a commercial vehicle on public roadways.

Accordingly, in proving Guru's liability under §308 in that Guru knew or should have known of Johnson's likelihood to create an unreasonable risk of harm when operating a commercial truck, evidence of Johnson's poor driving record is clearly relevant, and the probative value outweighs any danger of unfair prejudice. *See* Pa.R.E. 403. Moreover, any possibility of unfair prejudice that could have existed by admission of this evidence was properly avoided when the court bifurcated the liability phase of the trial in conformity with the holding in *Christiansen*, and gave an appropriate instruction on the limited purpose of such evidence. Therefore, Guru's motion for a new trial on the basis that the court erred in admitting evidence of Johnson's prior driving and criminal records is denied.

Next, Guru contends the court erred in giving the jury an adverse inference instruction against Guru because of its' inability to locate business records relevant to plaintiffs' claims.

At the request of the plaintiff's, the court charged the jury with the following instruction regarding Guru's failure to produce certain records:

> During the trial, Guru Global Logistics did not produce Andrew Johnson's driver file, documentation of leases, contracts, bills of lading or any other records of any kind that were required to be maintained according to the Federal Motor Carrier Safety Regulations. When a piece of evidence, one, is within the control of one party in the lawsuit; two, would be relevant and helpful to that party; and three, that party does no satisfactorily explain why it was not produced during the trial, you may find that the evidence would have been unfavorable to Guru Global Logistics if it had been produced at trial. And as far as the explanation as to why the evidence was not produced, you will recall that Mr. Rangru's explanation was that in moving from one residence to another, the records were lost, and it is up to you to decide if that constitutes a satisfactory explanation.

Notes of testimony, 12/19/13 pgs. 173-175.

The reason the court gave this instruction is because Guru did not produce documents which plaintiffs claim likely contained information material and relevant to plaintiffs' claims.

The court finds that the instruction given was an appropriate standard failure to produce instruction and not an adverse inference instruction directing the jury to make specific adverse inference against Guru, specifically, the court instructed the jury that it may find certain evidence would have been unfavorable to Guru, if the jury is not satisfied with Guru's explanation as to how such evidence

was lost. This is clearly not an adverse inference spoliation instruction.

However, even if the court did give an adverse inference spoliation instruction it would have been appropriate to do so in light of Guru's spoliation of evidence. Guru destroyed and/or lost documents relevant to many issues in this case, including Johnson's driver file. Documents like Johnson's driver file would have likely contained evidence relevant to plaintiffs' claim under §308 against Guru, specifically relating to Johnson's fitness as a commercial truck operator. According to Mr. Rangru's testimony, prior to destroying and/or losing these documents, Guru knew that it was required to safely maintain these documents under the FMCSR.

Under these circumstances, Pennsylvania Courts have not only determined that it is appropriate to sanction Guru, but that an adverse instruction is the least punitive of any possible sanction, our Supreme Court set forth the approach to be taken with respect to a spoliation of evidence claim in *Schroeder v. Department of Transportation*, 551 Pa. 243, 710 A.2d 23(1998). There, plaintiff's decedent was involved in an accident while driving a truck on a state road and a fire broke out in the engine area. The driver died at the scene. The plaintiff filed suit against both the seller and manufacturer of the truck as well as the department of transportation claiming negligence, strict liability and breach of warranty. Despite plaintiff's attempt to preserve the evidence, the truck was sold and the trial court granted summary judgment in favor of defendants based upon spoliation of evidence. The Commonwealth Court affirmed; however, our Supreme Court reversed and remanded, in its decision, the court addressed the factors to be considered in determining an appropriate sanction

for failure to preserve evidence: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. *Id.* 551 Pa. at 250, 710 A.2d at 27 (adopting the test of the Third circuit in *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3rd Cir. 1994")).

Here, Guru's argument for a new trial related to the standard failure to produce evidence instruction is without merit. The court finds that it did not give an adverse inference instruction and instead only gave a standard failure to produce evidence instruction. The court clearly followed the holding in *Schroeder* and avoided an possibility of prejudicial error or abuse of discretion. Accordingly, Guru's motion for a new trial is denied.

Lastly, Guru contends they are entitled to a remittitur or new trial as the jury's award for damages for decedent's conscious pain and suffering and the award for loss of decedent's services, society and comfort was excessive. In the alternative, Guru contends that the verdict should be molded to reflect the payment of first-party benefits and the amount of the settlement with other defendants, including a reduction for the 30% liability apportioned to Johnson.

The Pennsylvania Superior Court has defined a remittitur as follows:

A remittitur is the procedural process by which an excessive verdict of the jury is reduced, if money damages awarded by a jury are grossly excessive as a matter of law, the judge may order the plaintiff to remit

a portion of the award, in the alternative, the court may award a complete new trial or a trial limited to the issue of damages. The court may also condition a denial of a motion for a new trial upon the filing by the plaintiff or a remittitur in a stated amount.

*Refuse Mgmt. Sys. v. Consolidated Recycling & Transfer Sys.*, 671 A.2d 1140, 1149 (Pa. Super. 1996)(citing Black's Law Dictionary, 1295 (6th ed. 1991)).

If the verdict, or a portion of it, is plainly excessive and exorbitant so that it shocks the conscience, the trial court is to suggest a remittitur which fixes the highest amount any jury could properly award, giving due weight to all the evidence offered. *Doe v. Raezer*, 664 A.2d 102, 105 (Pa. Super. 1995), *app denied*, 675 A.2d 1248 (Pa. 1996). In other words, the suggested remittitur is not the trial court's judgment as to what the verdict should have been, but instead, is the highest amount a reasonable jury could have awarded based on the evidence. Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption. *Haines v. Raven Arms*, 640 A.2d 367, 369 (Pa. 1994) citing *Carminati v. Philadelphia Transportation Co.*, 405 Pa. 500, 509, 176 A.2d 440, 445 (1962).

In the instant case, the jury awarded decedent $365,000.00 for conscious pain and suffering, and decedent's parents each $1.5 million for loss of services, society and comfort. Guru requests that this court grant

a new trial as to these damages, or in the alternative a remittitur, because the jury's verdict is so excessive that it shocks the conscious and cannot be sustained, even when viewing the evidence in the light most favorable to plaintiffs. It is well settled that an award of compensatory damages is meant to compensate an innocent party for the injury suffered; the loss sustained should be compensated with the least burden to the wrongdoer consistent with the idea of fair compensation to the injured. *Refuse Mgmt. Sys. v. Consolidated Recycling & Transfer Sys., supra.* 671 A.2d at 1150.

The jury's award of $365,000.00 for Mark McConnell, II's conscious pain and suffering was appropriate and not excessive. According to the testimony presented at trial, as a result of the crash that occurred at approximately 8:13 AM decedent suffered massive injuries resulting in his death over an hour later at approximately 9:22 AM. The first person to arrive at the scene of the accident testified that she found decedent to be in and out of consciousness that the decedent would open his eyes and acknowledge that she was speaking with him and then close his eyes again. The flight paramedic testified that he administered an extremely strong pain medicine and a sedative to the decedent on the flight to the hospital to keep the decedent comfortable. The flight paramedic testified that decedent had massive injuries and had to be administered pain medicine and exhibited neurological activity and elevated blood pressure. Under these circumstances, the court finds that the jury's award of $365,000.00 for pain and suffering of the decedent to be reasonable and not excessive, exorbitant or shocking the sense of justice.

Likewise, the jury's award for loss of services, society

and comfort was appropriate. Pursuant to the wrongful death act, 42 Pa.C.S. §8301, stated beneficiaries including a decedent's parents are entitled to be compensated for loss of decedent's services, society and comfort.

Both parents testified extensively as to the losses of services, society and comfort they have and will continue to endure as a result of the loss of their son. Decedent's father testified to the extraordinary measure decedent would go to help people in need, particularly close family members. Decedent's father testified to the services that his son had provided, when he had sacrificed his entire summer as a 20 year old student to care for his grandfather who was dying of cancer. He also testified that he and his son would fish, golf, bowl and shoot pool on a regular basis and he has not engaged in any of those activities since his son's death. Decedent's mother testified that he son was never selfish and would go out of his was to help someone. They both testified to how their life has changed since his death and that they found comfort from her son's presence and they are devastated by the loss of comfort and society they endure as a result of his death.

Under these circumstance, the court finds that the jury's award of $1.5 million for each of decedent's parents for loss of services, society and comfort was not excessive. The jury was presented with more than enough evidence of Mark McConnell, II's injuries and resulting pain from this accident which justified the award of $365,000.00 for conscious pain and suffering. Furthermore, the jury was presented with significant evidence by decedent's parents of the losses of services, society and comfort to justify the jury's award of $3 million respectively. Accordingly, Guru has not met the heavy burden necessary to justify

remittitur because the jury awards are not excessive, exorbitant and shocking the sense of justice. Thus, Guru's motion for remittitur is denied.

In the alternative, Guru argues that the verdict should be molded to reflect the payment of the first-party benefits totaling $25,000.00 paid to the plaintiffs and the amount of settlement with the other defendants, including a reduction for the 30% liability apportioned to Johnson. Guru contends that at the time of the accident, decedent was a named insured driver under a policy of automobile insurance with Erie Insurance Group that provided payment of first party income loss of $15,000.00. The insurance policy also provided payment of accident death benefits of $10,000.00. Because plaintiffs received these amounts, the jury verdict should be reduced by the first-party benefits for at total of $25,000.00.

As a general rule damages incurred as a result of tort are not diminished because that party was able to recover or be made whole through insurance he or she purchased themselves. *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 33, 188 A.2d 259, 260 (1963)(quoting *Healy v. Rennert*, 9 N.Y.2d 202 (1961)). Damages are not to be mitigated by the plaintiff's receipt of money to compensate for lost wages and medical expenses if the amounts were incurred gratuitously or through insurance. *Id.* stated differently, it is a doctrine of damages law prescribing that payments from a collateral source do not diminish the damages otherwise recoverable from the tortfeasor. *Gallagher v. Pa. Liquor Control Bd.*, 584 Pa. 362, 369, 883 A.2d 550, 554 (2005). Also, all evidence of recovery from a collateral source is inadmissible and references to such may require a mistrial, unless such evidence is relevant to a material issue in the case. *Gallagher*, 584

Pa. at 374, 883 A.2d at 557.

In the instant case there is no basis in which to mold the verdict. In its brief, Guru states that plaintiffs settled their claims against Singh, Howard Truckline and Johnson and that Guru is entitled to have the verdict against it reduced because of Plaintiffs settlement with Johnson. However, there was not a true settlement between plaintiffs and Johnson. Rather, the agreement was to not seek to collect more than $850,000.00 against Johnson in the event of a verdict as Johnson gave plaintiffs an assignment of his rights to seek to collect the entirety of the verdict from Guru's insurer, Lancer Insurance, Co. Guru's argument to reduce the verdict by first-party benefits is unfounded and misinterprets The financial responsibility act under 75 Pa.C.S. §1722. Guru has not presented any case law to support its contention, nor have they provided any explanation as to how they are entitled receive a verdict reduction under 75 Pa.C.S. §1722. Thus, Guru is not entitled to a molded verdict. Moreover, the court finds that Guru has waived this argument as it did not raise or preserve it at trial.

For the reasons set forth in this opinion, defendant Guru Global Logistics, LLC's motion for post trial relief is denied.

## ORDER OF COURT

And now, this 7th day of August, 2014, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that defendant's post-trial motions, including a motion for judgment notwithstanding the verdict, motion for new trial, remittitur and motion to mold verdict, and all supplemental motions related thereto, are each denied.